## Isidor Baumgartl and Siegmund Wilhartz, Copartners, etc., v. Frank G. Hoyne and James F. Hoyne, Copartners, etc.

1. Real Estate Brokers.—*When Not Entitled to Commissions.*— If a broker is the procuring cause of a sale, he is entitled to compensation, but he must be the procuring cause, and not merely a cause of causes, some of which were neither the necessary or probable result of what he did.

Baumgartl v. Hoyne.

Memorandum.—Assumpsit for commissions.  ·Appeal from the Circuit Court of Cook County; the Hon. Thomas G. Windes, Judge, presiding. Heard in this court at the March term, 1894, and affirmed.  Opinion filed June 18, 1894.

## Statement of the Case.

Appellants and appellees being engaged in the business of selling real estate on commission, Mr. Wilhartz, of appellants, was, on the 15th day of May, 1890, introduced to Mr. Frank G. Hoyne, of appellees, at their office, 84 La Salle street, Chicago.

Appellees then had for sale a forty-acre tract of land in the city of Chicago, belonging to the estate of Thomas Hoyne, deceased, which the heirs of that estate had placed with appellees for sale on commission.   Mr. Hoyne represented to Mr. Wilhartz that if appellants would secure a customer for the land at $1,500 per acre, appellees would divide their commission with appellants.   Appellants thereupon entered the tract of land upon their books, advertised the property for sale and sent Mr. Utitz, a salesman in their employ, to see Mr. Strauss, Mr. Samuels, Mr. Bergenstein and others, with a view to selling them the tract of land.

The Sunday following the interview with Mr. Hoyne, Mr. Utitz, as the agent of appellants, took Mr. Strauss, Mr. Samuels, Mr. Bergenstein and a Mr. Pick out to see the property, these gentlemen contemplating the formation of a syndicate for the purchase of this property, and Mr. Strauss requested Mr. Utitz to ascertain from appellees the lowest price at which the property could be purchased.

About the first of May, Mr. Wilhartz and Mr. Utitz called at the office of appellees and told Mr. Frank G. Hoyne that it would be a hard task to sell the property for $1,500 an acre, and asked him the lowest price at which it could be offered.   Mr. Hoyne, according to the testimony of Mr. Wilhartz, replied that the property might ·be sold at $1,250 per acre, and that appellants could have one-half of all above that price at which the property should be sold through their efforts.

Mr. Utitz saw the parties whom he had taken to look at

the property, and according to his testimony they were still endeavoring to form a syndicate for its purchase, although from other evidence it would seem that being unable to raise the money they had practically given it up.

On the 10th of May, 1890, Mr. Strauss spoke to Mr. Rosenberg about the property. Mr. Rosenberg was also in the real estate business at Chicago. He was informed by Mr. Strauss of the efforts that had been made with Mr. Bergenstein, Mr. Pick and others, to form a syndicate for purchasing the property; that they were unable to raise the money, and two weeks previous had "dropped the deal," and Mr. Rosenberg was then asked by Strauss to look at the property with a view to its purchase and sale to a syndicate.

Mr. Rosenberg met and had some talk with Mr. Bergenstein, Mr. Pick, Mr. Witkowsky and a Mr. Miller, and while no definite or binding agreement was made by Mr. Rosenberg with them, yet it was understood that Mr. Rosenberg would look at the property, and if he thought well of it would buy it and dispose of it to a syndicate composed of the gentlemen named, upon terms that might be agreed upon.

Mr. Rosenberg thereupon called upon and saw Mr. Frank G. Hoyne, of appellees, telling him that he, Rosenberg, understood that the forty acres belonging to the Hoyne estate was for sale. Mr. Hoyne said it was, and asked Mr. Rosenberg, who called his attention to it. Mr. Rosenberg replied, a personal friend of. his. Mr. Hoyne showed him a card of Mr. Wilhartz and asked whether Mr. Wilhartz had called Mr. Rosenberg's attention to it, and whether Mr. Rosenberg knew Mr. Wilhartz. Mr. Rosenberg replied that he did not know Mr. Wilhartz, and that his attention had not been called to the property by Mr. Wilhartz; that he, Rosenberg, was not acting for anybody save himself; and, finally, made a purchase of the property from Mr. Hoyne for $56,000, $15,000 of which was cash and the balance on time.

Mr. Rosenberg disposed of the property to a syndicate composed of Mr. Lazarus, Mr. Samuels, Mr. Witkowsky, Mr.

Baumgartl v. Hoyne.

Pick, Mr. Strauss, Mr. Donnelly and himself. The syndicate taking the property from Mr. Rosenberg at the price of $60,000. Mr. Rosenberg kept for himself the entire $4,000 profit which he made in turning the property over to the syndicate.

It does not appear that appellants or any of their agents, or any one acting at their suggestion or in their behalf, called Mr. Rosenberg's attention to this property, or that he saw or heard of any of the advertisements inserted by appellants. Mr. Strauss, who called Mr. Rosenberg's attention to the property, saw Mr. James Hoyne, of appellees, and asked him if he would allow him, Strauss, a commission if he sold the property. Mr. Hoyne replied that he would, in case he, Mr. Strauss, sold it. Mr. James Hoyne then asked Mr. Strauss from whom he heard about the property, and Mr. Strauss replied that he heard of it through a Mr. Utitz. Mr. James Hoyne then stated that he did not know Mr. Utitz, and had never heard of him.

Appellees received from the Hoyne estate a commission of $1,400 for selling the property. Appellants having learned by seeing notices of conveyances of the property that it had been sold to a syndicate, some members of which they had not been in negotiation with, brought this action.

At the conclusion of appellant's testimony, upon motion of appellees, the court instructed the jury to find for the defendants.

Moses, Pam & Kennedy and James R. Ward, attorneys for appellants.

Hoyne, Follansbee & O'Connor, attorneys for appellees.

Mr. Justice Waterman delivered the opinion of the Court.

Appellants wholly failed to show that they were the procuring cause of the sale to Mr. Rosenberg. Appellees did not sell the property to the syndicate to which Mr. Rosenberg turned the property over. The dealings of appellees in

the matter of the final sale of the property were with Mr. Rosenberg and with nobody else.

Appellants themselves never made any effort to sell to Mr. Rosenberg, and had no communication directly or indirectly with him. The nearest appellants came to having induced Mr. Rosenberg to become the purchaser, is that they did have negotiations with several gentlemen for the purchase of this property, among whom was Mr. Strauss, a cousin of Mr. Rosenberg.

Mr. Strauss, of his own accord, and not by direction or procurement of appellants, spoke to Mr. Rosenberg about purchasing, and about the formation of a syndicate to take the property off from his, Rosenberg's, hands, in case he did purchase. Mr. Rosenberg then went to appellees, and as is indisputably the case, negotiating entirely for himself, and so informing appellees, bought the property of them for $56,000. That Mr. Rosenberg in so doing was acting, as he himself says, entirely for himself, is manifest from the fact that he did not give to any of the persons who formed the syndicate the benefit of his purchase, and that they did not claim that they were entitled to such benefit, but voluntarily and without objection, paid him $60,000 for what he, to their knowledge, had purchased for $56,000.

If, under the circumstances of this case, appellants are entitled to compensation from appellees, because for his own purposes, Mr. Strauss, to whom appellants had spoken, but who was in no way or wise an agent of appellants, called the attention of Mr. Rosenberg to this property and he purchased it, then appellants would be entitled to such commission if Mr. Strauss had spoken to Mr. A, Mr. A to Mr. B, Mr. B to Mr. C, and so on through an hundred of individuals, until in the transmission of intelligence from mouth to mouth and neighborhood to neighborhood, some one who was willing to, and did buy, learned that the property was for sale.

The syndicate to which Mr. Rosenberg sold the property was not made up of the same persons with whom appellants had negotiations, although some of the persons to whom

appellants presented the property, became members of the syndicate that purchased from Mr. Rosenberg.

The only sale made by appellees was to Mr. Rosenberg; it is half of the commissions received by appellees for making such sale, that appellants claim. Mr. Strauss, for his own purposes, called Mr. Rosenberg's attention to the property; Mr. Strauss went to appellees and took care to secure from them a promise of a commission if he, Strauss, sold the property; he in no way acted for appellants.

It is the proximate cause of which the law takes notice, and not the *causa causarum.*

To take notice of a cause of causes were infinite and would lead to endless confusion.

" *In jure non remota causa sed proxima spectatur.*"

Although this maxim is most frequently applied in cases of insurance and in actions of tort, as a principle it may be considered in any case wherein the efficient, promoting cause of a result is to be ascertained.

The proximate cause of an act is that which produces it without the interposition of an independent agency not the probable result of the first cause. Marble v. City of Worcester, 4 Gray (Mass.), 395.

In Scott v. Shephard, Smith's Leading Cases, 549, 2 Blackstone, 892, the throwing off of the squib by every person upon whom it fell, was a probable result of its being thrown upon a crowd of people.

In the present case it was not probable that Strauss would, for his own purposes, and of his unsought volition, present the property to Rosenberg.

Between all that appellants did and the purchase by Rosenberg, there intervened an entirely independent agency, viz., the determination of Strauss to call the attention of Rosenberg to the property, as well as to get, if he could, a commission for selling it to Rosenberg.

Apparently, after those to whom appellant had spoken had given up the thought of purchasing, and appellant the endeavor to sell to them, Rosenberg was approached by Strauss, and, without any communication with appellants, bought the property for his own use.

It is undoubtedly the rule that if a broker be the procuring cause of a sale, he is entitled to compensation; but he must be the procuring cause, and not merely a cause of causes, some of which were neither the necessary or probable result of what he did.

The judgment of the Circuit Court is affirmed.