### CLAMP v. PATTON.   (No. 2137.)

Court of Civil Appeals of Texas. El Paso.
March 29, 1928.

Rehearing Denied May 3, 1928.

**Brokers** ⬦53—**Broker merely informing person acting for prospective purchaser concerning location and owner of cattle held not procuring cause of sale.**

Person authorized to make sale of steers at agreed commission *held* not entitled to recover commission by virtue of having answered inquiry from another, acting for prospective purchaser, concerning identity of owner and place where cattle could be found; broker not being procuring cause of the sale.

Appeal from Kinney County Court; Jno. H. Stadler, Judge.

Suit by J. M. Patton against Jim Clamp. Judgment for plaintiff was entered in the county court on appeal from the justice court, and defendant appeals. Reversed and rendered.

Belcher & Montague, of Del Rio, and Clamp & Searcy, of San Antonio, for appellant.

Frank Lane, of Brackettville, for appellee.

HIGGINS, J. Patton sued Clamp to recover a commission of 50 cents per head on 316 steers sold by Clamp to Richmond and Finley. The case was appealed from the justice court to the county court, where Patton recovered. The only question we need consider is

whether the evidence supports the finding that Patton was the procuring cause of the sale. Upon this issue the evidence is undisputed.

Clamp owned the steers, which were ranging upon the T. J. Martin ranch about 10 miles from Brackettville, under an agreement between Clamp and Martin to share the net profits upon sale.

In December, 1925, or the following January, Hal Ramsey of San Angelo looked at the cattle and agreed to buy same provided he could make arrangements to finance the purchase and procure pasturage. With this tentative contract of sale Patton had no connection. Ramsey was unable to make the necessary arrangements, and so notified Clamp. Later Ramsey was in Fort Worth and told Finley about the 316 steers owned by Clamp in Kinney county near Brackettville. Later Finley came to Del Rio in the interest of himself and the company in Fort Worth for which he was working, and decided that he would look at the 316 head of cattle mentioned to him by Ramsey, and came over to Spofford to see about locating the cattle. Finley testified he saw R. E. Richmond at Spofford, and inquired of him who it was had 316 head of grown steers near Brackettville, and was told he (Richmond) did not know; but Richmond said he could find out, and telephoned to some one; that thereafter he and Richmond got in touch with Jim Clamp, and eventually bought the 316 head of cattle at $47 or $47.50 per head; that the first information he had concerning this herd of cattle was from Hal B. Ramsey, and acting on the information given by the said Hal B. Ramsey, concerning the ages, price, and location and quality of said cattle, he came to Spofford for the purpose of finding said cattle and seeing if he could buy same.

Finley also testified he had forgotten the name of the man Ramsey said owned the cattle.

R. E. Richmond of Spofford testified:

"On or about the morning of February 5, 1926, Dee S. Finley, of Fort Worth, Tex., came to see me at Spofford and asked me if I knew who had 316 head of grown steers ranging near Brackettville. I told him I didn't think there were any such steers in the country, but, when he stated that there were, I told him I could find out. I telephoned Mr. Patton (plaintiff) and asked him who had 316 head of grown steers ranging somewhere near Brackettville. He answered by saying that Jim Clamp did, and that they were on the T. J. Martin ranch. He also told me he had them listed for sale, and I believe he asked if I were interested in buying them, but I told him I didn't know, that I was making inquiry for another man. I then telephoned Mr. Clamp at Brackettville, who told me that the steers were running on the T. J. Martin ranch, and for us to go out there and Mr. Martin would show them to us. We went to the ranch, and Mr. Martin did show the steers to us, and later Mr. Clamp and Mr. Martin met us in Spofford and after trading around

for a while we finally bought the steers for $47 per head. All the negotiations were carried on with Mr. Clamp and Mr. Martin by me. * * * Yes; Mr. Finley and I were partners on the deal. When Mr. Finley first came to Spofford and spoke to me about going in with him in the deal I believe he did tell me that Hal Ramsey had told him about these steers, and had told him there were 316 head on a ranch near Brackettville, and had described the cattle as to age, size, quality, and character, and had told him they could be bought worth the money. Mr. Finley did not remember who owned the cattle, and said that, if Ramsey told him the name of the owner, he had forgotten it. We had some discussion over the price of the cattle. Clamp and Martin wanted $48 a head, and we offered $47; finally Mr. Clamp made the remark that, as no commission would have to be paid, they would take the price of $47 offered by us, and we closed on that basis. I did not, at any time, tell Mr. Clamp about having telephoned to Mr. Patton that morning, and nothing was said about Mr. Patton. Mr. Patton did not enter into the negotiations between ourselves and Mr. Clamp. There was no other communication with him except my telephone call to him that morning."

Patton testified:

"On December 6, 1925, he had some buyers for cattle, and, upon inquiry, learned that Jim Clamp was in San Antonio; he telephoned to Mr. Clamp at the Gunter Hotel in San Antonio, and was told that Mr. Clamp had 316 head of grown steers ranging on the T. J. Martin ranch, and Mr. Clamp said they were for sale at $43 per head. I told him if I made a sale that I would expect a commission of 50 cents per head. After this remark we discussed the price, and he said if a commission had to be paid, to put a price of $44 per head on the steers. He did not say that he would pay the commission if the steers were sold 'right now'; he said nothing about when the steers were to be sold; he said if the steers were sold they would have to be moved within 30 days so he could use the pasture. I did tell him I had some buyers coming, and I heard him testify just now that I said 'from the North,' and I guess I said it. On or about February 6, 1926, R. E. (Doc) Richmond called me over the telephone and asked me who it was had 316 head of grown steers ranging near Brackettville; I told him, 'Jim Clamp,' and asked if he were interested, that I had them listed with me for sale. He replied that he didn't know; that he was making the inquiry for another fellow. I did nothing else than answer the telephone as above stated, and, in reply to Mr. Richmond's inquiry as to who owned 316 head of grown steers ranging near Brackettville, told him that Jim Clamp did, and asked if he were interested, and he replied that he didn't know, that he was inquiring for another fellow. I had nothing further to do with any negotiations looking toward a sale of the cattle. I didn't have to do anything else; I did not communicate directly or indirectly, with Mr. Clamp concerning this telephone inquiry made by Richmond. After I had heard that a sale was consummated, I sent the bill to Mr. Clamp, which was shown in evidence."

Clamp admitted the conversation over the telephone between himself and Patton on De-

cember 6, 1925, but claimed he agreed to pay a commission provided Patton effected an immediate sale. In deference to the finding of the jury, it must be assumed Clamp did not place such limitation upon Patton's authority to sell.

But the evidence quoted conclusively shows that Patton did not find the purchaser, nor did he render any service in consummating the sale when a prospective purchaser appeared upon the scene, except, in response to an inquiry from another acting for the proposed purchaser as to the identity of the man owning the cattle, he gave Clamp's name and told where the cattle could be found.

In our opinion it is wholly inadmissible to say that the giving of this information, under the circumstances shown, is sufficient to show any service rendered by Patton which would justly entitle him to claim that he was the procuring or efficient cause of the sale made by Clamp. 9 C. J. title, "Brokers," §§ 95, 96; Burch v. Hester & Lawhorn (Tex. Civ. App.) 109 S. W. 399.

The case has been fully developed. Because of the insufficiency of the evidence to show Patton to be the procuring cause of the sale, the judgment is reversed and here rendered for appellant.

Reversed and rendered.