184 P.2d 821

**CLARK v. ELLSWORTH.**

No. 4968.

Supreme Court of Arizona.

Sept. 29, 1947.

Marshall W. Haislip, of Phoenix, for appellant.

Rawlins, Davis, Christy & Kleinman, of Phoenix, for appellee.

UDALL, Justice.

This is an appeal by plaintiff, a licensed real estate broker, from a judgment for defendant rendered by the court sitting without a jury in an action for a commission of $1,175 claimed to have been earned by plaintiff in connection with the sale of defendant's property.

Plaintiff's complaint sets up two counts. The first is upon an express contract to pay a commission (the written contract having been plead haec verba); and the second be-

ing for quantum meruit. At the close of his case plaintiff elected to stand upon the first claim for relief. It was his theory, as shown by both the pleadings and the evidence, that he had been employed by defendant to procure a purchaser and negotiate for the sale of certain of defendant's property located in Mesa, Arizona, and that as a result of his efforts under this agreement the property was sold. Therefore, due to his services rendered under the agreement, he, the plaintiff, was entitled to recover a 5% commission on the sale price thereof.

The facts show that on or about May 15, 1946, John Owens, an acquaintance of the defendant of 25 years standing, came to defendant's property for the purpose of installing the fittings for city gas. While there he inquired if the property was for sale and was informed that it was and that defendant "had anticipated selling it for $25,000" but "hadn't set a definite price on it". Thereafter, on June 1, 1946, defendant went to plaintiff's real estate office and with the representative in charge listed the property on the firm's printed form. It was understood by the parties at that time that the listing was not to be exclusive but that defendant intended to try and sell the property himself and also that he had listed it for sale with other realtors in the town. To manifest this feature of the agreement the word "exclusive" was striken from the listing form before it was signed. Plaintiff realtor then ran a blind ad in the newspaper quoting a sale price of $23,500 on the property which prompted Mrs. Owens, wife of the ultimate purchaser, to inquire of the firm which property it was that the ad had described. After being told that the ad had reference to defendant's property, Mr. and Mrs. Owens called upon defendant the following day and made a contract of purchase at the advertised price. The papers incident to the transfer were drawn by their attorney and were executed on June 11, 1946. Defendant who knew nothing of the advertisement or the purchaser's telephone inquiry to plaintiff concerning it, terminated his listings with all realtors including plaintiff as soon as this transaction was completed.

■ The trial court found that the plaintiff, Clark Agency, was not the procuring cause of the sale as the telephone conversation between the purchasers and plaintiff's salesman elicited nothing in the way of facts that purchasers did not already know. By law we are bound to view the facts as found by the trial court if there is any evidence at all to support such view, even though the weight of evidence may seem to be the other way. Hughes v. Cadena De Cobre Mining Co., 13 Ariz. 52, 108 P. 231. And yet the only assignment of error that we need consider here challenges these findings on the ground that they are not supported by the evidence.

There are a few cases upholding the right of brokers to recover commissions where they took no part in the negotiations, never saw the customer and some in which they

did nothing except advertise the property. But an examination of these cases will show that there the broker's prior activities were found to have been the efficient cause of the sale and in each and every instance where recovery was granted, the broker was the first in point of time to introduce the purchaser to the property. Libby v. Ivers & Pond Piano Co., 317 Mass. 478, 58 N.E.2d 834, and cases therein cited.

Whether a broker is the procuring cause of a sale of property listed with him is, usually, a question of fact. The term "procuring cause" as used in describing a broker's activity, refers to a cause *originating* a series of events which, without break in their continuity, result in accomplishment of the prime objective of employment of the broker—producing a purchaser ready, willing and able to buy real estate on the owner's terms. Wilson v. Schmidt & Wilson, Inc., 184 Va. 642, 35 S.E.2d 737.

In Arizona the law is well settled that a broker to be entitled to commission must have been the efficient, proximate and procuring cause of sale. Fink v. Williamson, 62 Ariz. 379, 158 P.2d 159; Garver v. Thoman, 15 Ariz. 38, 135 P. 724.

"* * * the very purpose of a broker's agency is to locate and interest prospective purchasers of his principal's property. If the agency is not exclusive, the owner may sell his property to any one not found by the broker." Miller Cattle Co. v. Chambers, 36 Ariz. 282, 285 P. 277, 279.

As applied to the facts of this case it certainly cannot be contended that plaintiff found the purchaser Owens, when prior to the time the listing was made with plaintiff, Owens had been dealing with the defendant for the property and stated that he "would be back to see about it". There is no evidence to show any service rendered by plaintiff's agency that would entitle him to claim that he was the procuring or efficient cause of the sale. Certainly the facts here do not even remotely suggest that the transaction was a mere subterfuge to defeat the broker of his commission. The findings of the trial court are fully sustained by the evidence.

There remains but one further point to consider. On this appeal (and for the first time) plaintiff contends that the below emphasized portion of the contract entitles him to judgment: "The above property to remain in your hands ~~exclusively~~ for a period of till notified and I agree to pay you 5% of the total selling price, immediately a sale is effected, *whether sold by me or any other person.*"

If the case had been tried upon this theory, a close question of interpretation would have arisen for the great weight of authority supports the rule that a stipulation in a real estate broker's contract promising him compensation in the event of a sale of the property by the owner himself during the life of the contract is valid and enforceable where the broker has used ordinary

diligence in endeavoring to make a sale of the property. Futrell v. Reeves, 165 Ky. 282, 176 S.W. 1151; 12 C.J.S., Brokers, § 75, page 166. However, this was neither the basis of plaintiff's pleadings in which the gravaman was clearly the procuring of a sale: "* * * as a result of plaintiff's efforts, under and by virtue of the aforesaid agreement * * * (defendant) did sell said property * * *." Nor was it the basis upon which the case was tried as evidenced by this comment of the trial court at the close of the case: "I don't see how it could be held that the Clark Agency was the *procuring cause* of the sale. For that reason the motion of the defendant for judgment is granted." (Emphasis supplied.)

It is well settled that a question or issue not raised in the trial court will not be considered on appeal. City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 102 A. L.R. 837; Hallenbeck v. Yuma County, 61 Ariz. 160, 145 P.2d 837; Davis v. Kleindienst, Ariz., 169 P.2d 78.

Judgment affirmed.

STANFORD, C. J., concuring.

LaPRADE, Justice (dissenting).

I cannot bring myself to concur in the majority opinion. We are all agreed on the fundamental rules involved. A broker to be entitled to a commission must have been the efficient, proximate, and procuring cause of the sale. Garver v. Thoman, 15 Ariz. 38, 135 P. 724; Leadville Mining Co. v. Hemphill, 17 Ariz. 146, 149 P. 384; Miller Cattle Co. v. Chambers, 36 Ariz. 282, 285 P. 277; Fink v. Williamson, 62 Ariz. 379, 158 P.2d 159. In the Leadville Mining Co. case, supra [17 Ariz. 146, 149 P. 387], this court said: "It is very clear that if the employment of a broker is to find a customer and he brings his principal and the prospective customer together and a trade is consumated, the broker is entitled to his commission, even though the principal effects the deal without the aid of the broker. * * *" I am of the opinion that the appellant was the procuring cause of the sale of the real estate in question, and that the contra finding of the trial court was not warranted by the evidence. This opinion I believe is warranted by the facts and supported by the decisions rendered in comparable fact situations. The case of Kacavas v. Diamond, 303 Mass. 88, 20 N.E.2d 936, 937, is illustrative of the correct application of the rules. I shall review this case rather fully for the reason that I believe it fairly demonstrates what is meant by the phrases "predominating cause," "procuring cause," "immediate and efficient cause," and "moving cause," when considered in relation to the efforts of a real estate broker to effect a sale of real estate.

In this Kacavas case it appeared that the defendant (seller) had, at various times, employed different real estate agents to effect the sale of his property; that plaintiff on or about August 23, 1935, brought one

Christou to defendant's place of business and introduced him. Christou was then interested in buying defendant's property—a store. Defendant offered, in the presence of the real estate agent, to sell his place to Christou for $8,500, to which Christou replied that the price was high but that he would not say that he was not interested and would "contact" the agent later. The agent (plaintiff) did not again see his prospective customer Christou until October 20, 1935, when he found Christou in possession of the property he had shown him on August 23, 1935—and learned that Christou had purchased the property. Early in October, 1935, defendant had listed the property for sale with other real estate agents including one by the name of Seminara. Seminara inserted an advertisement in the Boston Daily Globe on October 16 and 18, 1935, *which advertisement, like the advertisement, which appellant in this case caused to be published, was a "blind advertisement,"* stating the terms of sale but not identifying the location of the property. Christou read this advertisement and thereupon contacted the second agent Seminara, and went to the defendant Diamond to consummate the sale. At the meeting Christou reminded Diamond, in the presence of the second agent Seminara, that the plaintiff Kacavas had previously taken him to the premises.

The trial court in this Massachusetts case held that plaintiff agent Kacavas, who first showed the property on August 23, 1935, was in effect the procuring cause of the sale and entitled to his commission. On appeal, in which the judgment of the trial court was *reversed,* the court said:

"The plaintiff was not entitled to his commission unless, before his authority was revoked, he produced a customer for the defendants' business who was ready, able and willing to purchase it on their terms, although it was not essential that a sale be consummated, * * *.

"It is clear that at least until October 16, 1935, the plaintiff had not earned a commission, since at the interview with Diamond in August Christou stated that the price was too high, and that he was not willing to buy. Although he then said he *would 'contact' the plaintiff, he did not do so.* The mere fact that the sale to Christou was completed through a second broker does not of itself bar a recovery by the plaintiff provided he was the real, predominating, efficient cause of the sale.

\* \* \* \* \* \*

"After the meeting at which the plaintiff introduced Christou to the defendants and nothing came of that meeting, although the plaintiff knew that the defendants' asking price had been $1,500 less than the figure quoted to Christou, the plaintiff did not endeavor to persuade the defendants to agree to a lower price, nor did he inform Christou that a lower price might be obtained. We think it could not be found that the former negotiations had not come bona fide to an end and were not, though only for a time,

abandoned by the buyer and seller, nor that the negotiations were not resumed as the result of Seminara's intervention as broker See Delaney v. Doyle, 267 Mass. 171, 177, 166 N.E. 623; Glendon v. Pyne, 375 Mass 528, 530, 176 N.E. 602. *The evidence would not warrant a finding that Christou was not found anew as a prospective customer, when he responded to the 'blind' advertisement inserted in the newspaper by Seminara,* compare Whitecomb v. Bacon, 170 Mass. 479, 482, 49 N.E. 742, 64 Am.St.Rep. 317; Winchester v. Erickson, 281 Mass. 210, 213, 183 N.E. 350, or that the sale was not the result of a new force, namely, the efforts of Seminara." (Emphasis supplied.)

With these principles in mind I will endeavor to analyze carefully the fact situation as I interpret it from the transcript of evidence. On May 15, 1946, some 25 days before the purchasers read the advertisement inserted in the newspapers by appellant, the purchaser, Mr. Owens, as an employee of the City of Mesa, was present at the premises of the defendant-seller, installing some gas lines. He had known Mr. Ellsworth for approximately 25 years. He learned that Mr. Ellsworth was contemplating moving to Globe, Arizona. In this regard Mr. Ellsworth testified as follows: "A. Mr. Owens is city utility man, he was to my place on or about the 15th day of May installing city gas which I had ordered for three years. Mr. Owens asked me what I was going to do with the property *if I moved.* We discussed my moving to Globe. I told him we had good revenue from the rentals but I *propably would sell if we were moving up there.* He said, 'What would you ask for the place?' I told him I had had it listed for 25 thousand. Mr. Owens and I walked around the place and looked it over. He says, 'Well, you have got a nice place here', he says, 'I would like to own it, being close to my work'. He says, 'I will be back and see you about it'. They connected the gas and then it was about three weeks before Mr. Owens came back down and told me he was figuring on buying the place." (Emphasis supplied.)

Additional testimony by Mr. Ellsworth was as follows:

"Q. Relative to the conversation you had with Mr. Owens on or about the 15th day of May when he was there at your house looking at some gas mains or connections, you told Mr. Owens at that time, did you not, that you were considering selling it for $25,000.00? A. *I told him I had anticipated selling it for twenty-five thousand;* we hadn't set a definite price on it. (Emphasis supplied.)

"Q. You hadn't set any definite price at that time. You did not at that time under any condition offer to sell him the place for $23,500, did you? A. No, sir."

It is to be noted in this conversation that Mr. Owens was desirous of knowing what Ellsworth would do with the property if he moved away. Ellsworth testified—"I probably would sell if we were moving up there."

Owens propounded this question to him, "What would you ask for the place? to which Ellsworth responded, "I told him I had had it listed for $25,000." Owens admired the place and concluded the conversation by saying, "I will be back and see you about it." Here it is important to note that he did not return to see about the property until he and his wife were stimulated by the advertisement into making inquiry about the property which could be purchased for $23,500. A fair interpretation of the evidence discloses that Ellsworth's moving to Globe was problematical; it was also problematical that he would sell even if he did move. He told Owens that in the past he had had the property listed for $25,000. He further testified, "I told him I had anticipated selling it for $25,000; we hadn't set a definite price on it." I cannot discern from this testimony any offer to sell. Certainly this discussion between the seller and purchaser did not progress to the extent of appellee's offering to sell or saying unequivocally that he was then ready and willing to sell the property for $25,000 or any other sum.

On June 9th, Mrs. Owens read the advertisement referred to which reads as follows: "Five acres of land; place has three lovely apartments all completely furnished, rents are $60.00 a month each. This also has a nice seven room home, $23,500.00 Kenneth Clark Agency, 60 Main Street, Mesa, Phone Mesa 817 or Tempe 416." She called the broker's office and talked with a salesman. She desired to know *what* property was deferred to in the advertisement. He told her that it was the Ellsworth property. She then told the salesman that she was acquainted with the property and declined his proffer to take her to the premises. She informed him that she and her husband would go to look at the place by themselves, which they did, and which culminated in their purchase of the property.

The mere fact that the purchaser was acquainted with the property at the time he read appellant's advertisement should not preclude a recovery. Wilson v. Schmidt & Wilson Inc., 184 Va. 642, 35 S.E.2d 737. The observation made by the trial court that Mrs. Owens did not secure any facts or information from the telephone conversation that she did not already possess I do not believe is justified. She did not know the location of the property referred to in the advertisement. She read the advertisement and told her husband about it and they discussed it. What was there about this advertisement that caused Mrs. Owens to make the telephone call? The advertisement indicated that it was desirable income property that could be purchased for $23,500. Mrs. Owens wanted to know what property could be purchased for that sum. Her mind and interest were stimulated and quickened by this advertisement which was bought and paid for by appellant in the course of conducting his business. The appellee who employed him well knew that he would employ his time and incur expense in endeavoring

to secure a purchaser. These purchasers by virtue of their long residence in Mesa knew of this property and a thousand other pieces of property. By casual conversation with the seller they discovered that he might move away; that if he did move he might sell; and that if he did sell he probably would ask $25,000 for the property. They had not seen fit to explore these contingencies and apparently were not interested. The advertisement was an unequivocal offer to sell by a seller ready, able, and willing to sell at a stipulated price. The description and the price apparently were appealing, and prompted immediate inquiry which culminated in a direct sale. Brokers are entitled to recover their commissions where they take no part in negotiations, never see the customer, and do nothing but advertise the property. Gleason v. Nelson, 162 Mass. 245, 38 N.E. 497, Maloon v. Barrett, 192 Mass. 552, 78 N.E. 560. In the Gleason case, supra [162 Mass. 245, 38 N.E. 497], the court said: " * * * If the broker employed other persons to aid him, whether under pay or not, or if he put up maps, signs, notices, or otherwise advertised the property, by means of which a person was induced to open negotiations with the owner which resulted in his buying the property, the sale may be said to have been effected through the broker's instrumentality. * * *" In the Maloon case, supra, the defendant placed certain real estate in the hands of plaintiff, a broker, for sale, directing him not to advertise the same. Plaintiff published an advertisement of the

property in good faith, having forgotten his instructions, and a purchaser, learning that the property was for sale by reason of the advertisement, went to defendant direct, as the result of the advertisement, and purchased the property. The court held that plaintiff-broker was entitled to recover regardless of the fact that he had secured the customer through unauthorized means.

In the Fink case, supra, I was compelled to dissent as here. In that case the majority members of this court affirmed a judgment in favor of the real estate broker upon the bare showing that the broker had first exhibited the property to the ultimate purchaser, and in spite of the fact that he alienated the purchaser, and did nothing to bring about the consummation of the sale. The sale was made through another broker. The purchaser testified that he would have no dealings with the plaintiff broker; the plaintiff broker was helpless to conduct any negotiations leading to any sale. In this Fink case it will be noted that the prospective purchaser had heard of the premises, sought out the realtor, and had the premises exhibited to him. At the time the plaintiff realtor first showed the premises he had no listing and no authorization from the owner to conduct negotiations leading to a sale. In the instant case the purchaser Owens, like the purchaser in the Fink case, knew of the premises.

The majority of the court considered that the foregoing facts legally established that the realtor's aborted efforts were the pro-

curing cause of the sale. If such a state of facts constitutes a procuring cause, then I am at a loss to understand why the facts in the instant case should not be evaluated as the procuring cause. The activity of the plaintiff realtor enlightened and kindled the interest of the purchaser by advising him that the plaintiff had authorization to sell, informing him of the location of the premises and the selling price. This solid foundation is blasted away by considering the seller's casual knowledge that the premises might be for sale a legal defense. This "defense" became available because at another time, when the purchaser was present on the premises on a mission entirely foreign to negotiating a real estate deal, the seller advised him that he might move away; that if he did move away he might sell; and that if he did sell he might ask $25,000 for the property—which palaver interested the purchaser not at all. That this preliminary conversation between the buyer and seller was considered of no consequence is forcibly demonstrated by the fact that the seller subsequently listed the property with numerous agents, obligating himself to pay a commission of $1,175. He would not have considered incurring this expense if it had ever occurred to him that Owens was a potential purchaser. I think the facts and reasons herein given demonstrate conclusively that plaintiff found the purchaser Owens. The majority opinion says, "Owens had been dealing with the defendant for the property and stated that he 'would be back to see about it.'" Again I say that if Ellsworth had been having any "dealings" with the purchaser he had forgotten about it and was not aware of it at the time he was willing to pay a realtor a fee to sell his premises. I am of the opinion that the preliminary casual conversation had between the buyer and seller cannot be designated as "dealings" or "negotiations." At that time the owner Ellsworth had not even mentally committed himself to become a seller. If this preliminary conversation is worthy of the designation of "dealings" or "negotiations" they certainly were not only dormant but had been abandoned. The sale resulted solely through the intervention of the plaintiff.

The case should be reversed with instructions to enter judgment for the plaintiff.