ZimmeRmaN, J.
The bill of exceptions discloses that Marian E. Gfroerer was desirous of purchasing a home in the city of Cincinnati or its environs. Late in 1953 or early in 1954, Mrs. Gfroerer and Emma M. Foster, plaintiff’s licensed saleswoman and agent, made contact and together over a period of time visited several localities in and about Cincinnati and viewed numerous residence properties. Mrs. Gfroerer also made a number of independent excursions and on one of them noticed favorably a house in process of construction at 2609 Bonnie Drive, Cincinnati, and owned by defendants. Later, Mrs. Gfroerer and Foster, while looking at houses generally, visited the Bonnie Drive premises, probably at Mrs. Gfroerer’s suggestion. Still later, Mrs. Gfroerer, her husband and Foster went there together, and on various other occasions Mrs. Gfroerer, with her mother-in-law, father-in-law and other members of the family, visited the premises in the absence of Foster. Foster talked with John Hillard, father-in-law and then an em *473 ployee of Willard D. Worley, about the property, and on one occasion at least sbe spoke with Worley personally.
Although she requested it, both Hillard and Worley refused to give Foster an exclusive agency to sell the property; the most either offering her being an oral nonexclusive or open listing of the property at a selling price of $27,500. And there the matter rested.
Later, Foster heard that the property had been sold to a Chicagoan, and apparently she did nothing more with respect thereto. Still later, the G-froerers contacted Hillard and Wor-ley directly about buying the property, with the result that negotiations were entered into and a written contract executed, whereby the Gfroerers purchased the property for $25,500.
It is the established rule that before a real estate broker is entitled to collect a commission for the sale of property he must show that he was the “procuring cause” of the sale.
“The term ‘procuring cause’ as used in describing a broker’s activity, refers to a cause originating a series of events which, without break in their continuity, result in accomplishment of the prime objective of employment of the broker— producing a purchaser ready, willing and able to buy real estate on the owner’s terms.” Clark v. Ellsworth, 66 Ariz., 119, 184 P. (2d), 821. To the same effect, see Atkinson v. S. L. Nusbaum & Co., Inc., 191 Va., 82, 59 S. E. (2d), 857, and Averill v. Hart & O’Farrell, 101 W. Va., 411, 132 S. E., 870.
It is apparent that cases of the kind under review have factual differences, and that whether a broker claiming a commission for the sale of property was the “procuring cause” thereof depends largely upon the particular facts of the individual case.
With the above definition of “procuring cause” in mind, let us examine the facts in the instant case.
First, it was Mrs. Gfroerer herself who first discovered the property in issue. Second, Foster was engaged by Mrs. Gfroerer to assist the latter in locating a suitable home, and Foster’s services were neither requested nor solicited by the defendants. Third, the most Foster was able to secure from Willard D. Worley, a defendant-owner, was an informal, oral, *474 open or nonexclusive listing of the Bonnie Drive property at a definitely stated selling price of $27,500 — an open or nonexclusive listing being one where other brokers or even the owner himself is at liberty to procure a purchaser for the property. Fourth, Foster apparently made no attempt to bring the Gfroerers and the defendants together for discussions relative to the purchase of the property at a mutually satisfactory price, nor did Foster make the defendants an offer in any amount, either orally or in writing, on behalf of the Gfroerers. Fifth, during a period in which Foster was entirely inactive with respect to the property, the Gfroerers and Willard D. Worley entered into direct negotiations for the first time, and a sale was thereupon effectuated at a price of $25,500.
There can be little doubt as to the general rule “that if property is placed in the hands of a broker for sale at a certain price, and a sale is brought about through the broher as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale, accepts a price less than that stipulated to the broker.” Annotation, 46 A. L. R. (2d), 852.
However, a well recognized exception to the general rule is “that when the contract between the broker and his principal expressly makes the payment of commissions dependent on the obtaining of a certain price for the property the broker can not recover even though the owner sells at a lower price to a person to whom the broker has first shown the property, unless the broker is prevented from making the sale by the fault of the principal.” Annotation, 46 A. L. R. (2d), 859. See, also, 8 American Jurisprudence, 1101, 1102, Section 190, and Dethloff v. Starbuck, 116 Ohio St., 29, 155 N. E., 552.
This court is not required to and ordinarily will not weigh evidence, but “where all the evidence considered by a trial court has been incorporated in a bill of exceptions, the Supreme Court can, without weighing evidence, disregard the findings of the trial court on a particular factual issue if the evidence requires a different finding as a matter of law on such factual issue.” Barsan v. Pioneer Savings & Loan Co., 163 Ohio St., 424, 127 N. E. (2d), 614.
*475 In most instances, the question of whether a broker was the “procuring cause” of a sale is one of fact, but where it is undisputed that the owner of the property at the broker’s solicitation quoted the latter a definite selling price, that the broker did not induce a sale at such price or, on behalf of his prospect, enter into negotiations with the owner for the purchase of the property at a lower figure, and that the broker failed to bring the parties together for a discussion of the transaction, whereby a mutually satisfactory price might be agreed upon, the essential elements constituting “procuring cause” are lacking as a matter of law, and the broker may not successfully claim a commission for an independent salo at a later date of the property to the prospect by the owner for a substantially lower amount than that quoted the broker. For its reasoning, compare Hoke v. Marcis, 71 Ohio Law Abs., 364, 127 N. E. (2d), 54. Compare, also, Jackson v. Northwestern Mutual Life Ins. Co. (C. C. A., 4), 133 F. (2d), 111, 113, 114, and Bullis & Thomas v. Calvert, 162 La., 378, 383, 110 So., 621, 623.
Certainly, in a situation like the one before us, where a selling price for the property was stipulated by the owner to the broker, the broker in claiming a commission for the sale of the property should at least show that he found a ready, able and willing purchaser and brought such purchaser and the owner together to discuss a contract of sale and purchase, including the element of a commission for the broker. Pfanz v. Humburg, 82 Ohio St., 1, 12, 13, 91 N. E., 863, 865, 29 L. R. A. (N. S.), 533, 536, 537.
Specifically, plaintiff’s agent, Foster, did not produce a buyer ready, willing and able to purchase the property on the terms specified to her by the owner, and otherwise her activities and accomplishments did not rise to such a level that it can reasonably and fairly be said she was the “procuring cause” of the sale. The mere fact that a broker shows property to a possible purchaser does not in and of itself entitle the broker to a commission when such possible purchaser becomes the actual purchaser at some subsequent time in circumstances uninfluenced by the broker.
*476 We find no good or sufficient reason for reversing the judgment of the Court of Appeals, and such judgment is, accordingly, affirmed.

Judgment affirmed.

WeygaNdt, C. J., Stewart, Bell and Taft, JJ., concur.
Herbert, J., concurs in paragraph one of the syllabus but dissents from paragraphs two and three thereof and from the judgment.
Matthias, J., dissents.