Weygandt, C. J.
 

 The only question requiring the consideration of this court is whether the Court of Appeals committed error in reversing the judgment of the trial court upon the single ground that there is no evidence in the record tending to show the
 
 time
 
 of any of the alleged alterations of the note. Restated and simplified the question is whether there is any evidence of any alteration made without Mrs. Bailey’s assent and
 
 subsequent
 
 to the execution and delivery of the note.
 

 The parties are agreed that the signature on the questioned document is Mrs. Bailey’s, and also that there is evidence of alteration. But they are in vigorous dispute as to whether the record discloses evidence tending to prove that the alteration occurred
 
 after
 
 delivery and without Mrs. Bailey’s knowledge, as found by the jury in answer to the defendant’s interrogatory.
 

 It is impracticable to quote at length from the 500-page record, but this is unnecessary inasmuch as the
 
 *501
 
 majority and dissenting opinions of the Court of Appeals contain adequate but slightly different summaries of the evidence. The first of these is as follows:
 

 “The genuineness of Mrs. Bailey’s signature to the note having been admitted, the note was offered and received fin evidence, whereupon appellee [defendant] proceeding with his defense thereto, called Fensler for cross-examination, who testified that he had been in the real estate' business for about 12 or 13 years and that he had known Mrs. Bailey, who was an elderly lady whose age he did not know, for approximately 24 years while she was residing at the Chesbrough Dwellings on Jefferson avenue in Toledo, of which, during that time, he was the manager; that at various times she borrowed of him small sums of money which she always-repaid; that she was accustomed to discuss somewhat her business affairs with him; that all of the written parts of the note were his and that it was complete and was as it now appears to be when she signed it; that it has since been continuously in his possession and has not been altered or changed in any way; that he loaned her $500.00 in currency in 1929; that in October, 1930, he loaned her $1,500.00 in cash, from which he deducted $30.00 interest due on the $500.00 loan,-a note for $2,000.00 being executed and delivered to him by Mrs. Bailey; that subsequently he loaned her sums aggregating $2,500.00, she then giving him the $4,500.00 note, the note previously given being thereupon returned to her; that during 1929 and 1930 he built for sale some 12 or 15 houses and two duplexes, selling all but one duplex at a profit of from $800.00 to $1,500.00 on each house and about $1,800.00 on the duplex; that during the last five years he had built six bungalows ‘that ran from $500.00 to $700.00;’ that he had a safety deposit box in the ‘old Dime Bank’ and later in the ‘Ohio,’
 
 *502
 
 and during 1929 had an average of ‘a couple of thousand dollars’ therein and in 1930 around $5,000.00, and in 1931 when ‘the banks closed, had between $4,-000.00 and $5,000.00’ in his safety box; that Mrs. Bailey told him that she had heavy expenses, having to send money to a divorced wife of one of her sons and to take care of two of his children, and she wanted the money for ‘taxes and her heavy expenses’; that when the banks closed in Toledo ‘she said she needed the money and she could not borrow it from any place. She said she tried - at the Commerce-Guardian and they wouldn’t let her have any;’ that in January of 1930 he received ‘2400 and some dollars’ from the Chesbrough estate on a note evidencing a loan to Mr. Chesbrough and in November of that year was paid $4,700.00, the balance due on the note; that in 1931 he made ‘a construction, People’s Savings Bank’ mortgage and that there are now nine or ten separate mortgages against properties owned by him; that in 1929 he was paying interest on,two mortgages, in 1931 on three and in 1932 on two. Another witness called by appellee testified that he was president of The Reliance Development Company which purchased real estate from Mrs. Bailey for which she received ‘between some date in March, 1929 and April 4, 1930, $50,000.00 and a little interest,’ she after-wards taking back seven lots of the aggregate value of $700.00. He testified as to certain other real estate owned by her, worth a large amount of money prior to the depression. A son of Mrs. Bailey testified that she died on December 9, 1933, aged 85 years; that the taxes on her Lucas county real estate was about $6,-000.00 a year in 1929 and 1930, and in 1931 and 1932 about $7,000.00 a year, and that her real estate was ‘for the most part’ unproductive; that during the years 1930, 1931 and 1932 she paid his ex-wife $250.00
 
 *503
 
 per month, and also the school expenses of two of his children.
 

 “A hand-writing expert expressed the opinion that the note was originally for $45.00, which sum had been raised to $4500.00 in the figures as well as in' the writing thereof, and that in the date ‘October 6, 1931’ the ‘2’ had been changed to a ‘1.’ He had no opinion and could not say as to when the claimed alterations were made. An expert on hand-writing called by appellant, stated that he found no evidence of any alterations in the body of the note and that in his opinion there were none.”
 

 The dissenting judge summarized the evidence as follows:
 

 “Appellant [plaintiff] testified that he knew Mrs. Bailey intimately from 1909 until her death in 1933, during most of which time she lived at the Chesbrough Dwellings in Toledo of which he was manager; she frequently borrowed small sums of money from appellant and other persons when she was short of ready cash. She owned- approximately forty parcels of real estate in Lucas county, most of which were vacant and unproductive, and her taxes on this land amounted to between $6,000.00 and $7,000.00 a year. Her income was not large, and in addition to these taxes and her own living expenses, she supported a daughter-in-law by paying her $250.00 a month and sent two of her grandchildren through school and college. In the fall of the year 1929 appellant says he loaned Mrs. Bailey $500.00 in cash, taking no note but making a memorandum of the loan in a book at the Chesbrough Dwellings in which he kept an account of petty cash. In the fall of 1930 he says he loaned her an additional $1,500.00 deducting $30.00 for interest on the previous loan and giving her $1,470.00 in cash. For this he stated he took a note in the sum of $2,000.00. Again, in the fall of 1931, he says she borrowed from him a
 
 *504
 
 further sum of $2,500.00 which he paid to her in currency at two different times, first $300.00 and then $2,080.00, being the balance left after deducting $120.00 interest for one year on the $2,000.00 note. He stated that Mrs. Bailey told him she wanted the money to pay taxes and other expenses. It was at this time that appellant claims Mrs. Bailey gave him the note which is the subject of this action, and he then surrendered to her her former note of $2,000.00. He could not fix the month in any of these years when these alleged loans were made.
 

 “As against this, appellee [defendant] offered evidence that in 1929, the year of the first claimed loan, Mrs. Bailey had sold some real estate on Central avenue for $50,000.00, of which she had received $25,-000.00 by the end of March, 1929, and the remaining $25,000.00 in instalments of which the last was paid to her on April 4, 1930; that her taxes were paid, or virtually so, before the apparent dates of these alleged loans; also that at the time of the last alleged loan of $2,380.00 in cash in the fall of 1931, nearly all of the banks in Toledo had closed, most of them in August of that year, and about that time appellant owned eight or nine different properties, he having been engaged in the real estate business, all of which were encumbered with mortgages; that he had borrowed money on his personal life insurance, which he subsequently paid back, and he made certain applications for loans to himself. It further appeared that while Mrs. Bailey carried a checking account at The Commerce-Guardian Trust & Savings Bank and a savings account at The Security-Home Trust Company, in Toledo, during the period above mentioned, the records of neither bank disclosed that Mrs. Bailey had ever deposited either the sum of $500.00 in 1929, or $1,470.00 in 1930. As to the claimed loan in 1931, that was after these banks had closed. Appellee further
 
 *505
 
 offered evidence that at the time of the alleged loans to Mrs. Bailey in 1929 and 1930, appellant drew no checks on his account in The Ohio Savings Bank &■ Trust Company, of Toledo, either in the sum of $500.00 or $1,470.00' or $1,500.00.
 

 “Appellant also testified that shortly after he brought this action he retired from the position of manager of the Chesbrough Dwellings, gave up his apartment there, and destroyed various accounts and documents, including the petty cash book in which he stated that he had entered the amount of the original loan of $500.00 to Mrs. Bailey. He also stated that he used his checking account in The Ohio Savings Bank
 
 &
 
 Trust Company solely for the purpose of conducting his real estate operations, that he was accustomed to keep his other money, or at least a considerable sum in cash, in a safe in the Chesbrough Dwellings.
 

 “Furthermore, Lieut. Stephens, the hand-writing expert from Detroit, testified positively that two different pens had been used in the preparation and execution of this note; that the pen which wrote ‘October 6 in the date of it’ was the same pen as was used in the signature of Anna H Bailey. He also said that he had determined that the words ‘two’ and ‘years’ are almost a thirty-second higher than the word or letters ‘William E. Fensler’ and.‘hundred.’ The pen that wrote ‘October 6’ had a spread of 1/64 of an inch to a thirty-second of an inch, whereas the pen used in writing the name of ‘William E. Fensler’ and the word ‘hundred’ had a normal spread of the nibs of 1/128 of an inch and the widest 1/32 or 1/64 of an inch. This witness also stated that the words ‘forty-five’ and ‘hundred’ in the amount could have been written by the same pen but were made at different times on account of the size and spacing of the letters, and in his opinion the word ‘hundred’ was
 
 *506
 
 written after the ‘forty-five.’ Furthermore, Exhibit 2, being the note in question, shows after the printed figure ‘19’ the remainder of the alleged date, namely ‘31’ to have been apparently retraced with a pen so as to make them unusually broad and heavy.
 

 “As to this the appellant said that in filling in the date on the note he put the year as “193.” Then he noticed the omission of the one and so inserted that after the three and then retraced both it and the three very heavily so as to make the date perfectly clear. Then he made a heavy horizontal dash after the one.
 

 “The appellee claimed that the original date had been 1932 and the figure ‘2’ had been erased and changed into ‘1;’ that the. reason for the dash after the figure ‘1’ was that, as appears by a number of exhibits, appellant was in the habit of making a long horizontal tail to the figure 2 when he wrote it and it was to obliterate this so-called tail that the dash was put it. Further, appellant testified he had filled in the note all at one time. He could not say whether he used more than one pen in doing so because he did not remember whether the pen he began with was scratchy and that he therefore changed to another. But he was certain that he made no alteration and that he prepared the entire instrument at one time previous to Mrs. Bailey signing it.”
 

 According to the Ohio rule, the burden of going forward with the evidence to establish the time of an alteration apparent on the face of a promissory note is upon the party who interposes such a defense.
 
 Franklin
 
 v.
 
 Baker, Exr.,
 
 48 Ohio St., 296, 27 N. E., 550, 29 Am. St. Rep., 547. But it is likewise elementary law that this may be shown by circumstantial evidence. The salutary and practical nature of the latter rule is readily apparent in such cases as this in which one of the parties to the transaction is dead. This court agrees with the plaintiff’s contention that this
 
 *507
 
 record discloses no single circumstance sufficient to serve as a basis for the jury’s verdict; but it is also the view of the court that the cumulative effect of the multitude of circumstances here shown is such as to preclude a reviewing court from holding that reasonable minds may not differ in the conclusions to be deduced therefrom. In this connection counsel for the defendant point to the fact that among the four judges who participated in the consideration of this case in the lower courts, two were of one opinion while the other two were of the opposite view.
 

 But the plaintiff claims the benefit of the rule announced in the latter part of the syllabus in the case of
 
 Franklin
 
 v.
 
 Baker, Exr., supra,
 
 to the effect that “in the absence of anything to the contrary,” there is a presumption “that any alteration appearing on the face of the paper was made at or before the time of its execution.” However, it must be noted that this principle applies “in the absence of anything to the contrary”; and a study of the facts in that case discloses that the defendant offered no evidence whatsoever on the issue of alteration. The plaintiff offered merely the note together with proof of the genuineness of the maker’s signature. Obviously the situation is quite the contrary in the instant case.
 

 There are at least three conflicting views relative to the time when an alteration apparent on the face of an instrument will be -presumed to have been made. Under the old and harsh rule it is the presumption that the alteration was made subsequent to the execution and delivery of the instrument. According to the later and contrary rule the alteration is presumed to have been made before, or contemporaneously with, the execution and delivery. However, the modern and best-reasoned view indulges no presumption as to the time of the alteration, but the entire question is for the jury to consider in the light of all the evidence.
 
 *508
 
 2 Am. Jur., 671; 3 Corpus Juris Secundum, 998;
 
 Luna
 
 v.
 
 Montoya,
 
 25 N. M., 430, 184 P., 533. As has been noted, Ohio follows the second rule
 
 in the absence of evidence to the contrary.
 
 But when evidence is introduced tending to prove subsequent alteration, it is the view of this court that the law should indulge no presumption as to when or by whom the alteration was made; this question should be determined by the jury from the evidence alone.
 

 Applying the foregoing reasoning to the instant case, it is apparent that the judgment of the Court of Appeals must be reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Matthias, Day, Zimmerman, Williams and Myers, JJ., concur.
 

 Jones, J., not participating.