363 P.2d 61

**Robert DARU, Appellant.**

**v.**

**Louise T. MARTIN, a single woman, and Arthur I. Schiffman, a single man, Philip F. Haas and Dorothy Haas, husband and wife, and Matt Ryan, an unmarried man, Appellees.**

**Nos. 6577–6589.**

Supreme Court of Arizona.

En Banc.

June 22, 1961.

Rehearing Denied Sept. 26, 1961.

pellees Schiffman, Haas, and Ryan (hereinafter called vendees). The vendor, Louise Martin, owned a tract of land west of Tucson and during the months of May or June of 1955 had shown plaintiff Daru, a New York attorney, the land in question, advised him of certain restrictions on the land, and also told him of additional supplemental restrictions which she intended to place on the land before sale.

Several weeks thereafter on Thursday, July 21, 1955, plaintiff called vendor from New York City suggesting that she give a friend of his in New York, who vendor understood was one Emanuel A. Perry, an option to purchase her property. Later that same day vendor wired plaintiff to the effect that since his buyers were out of town for the weekend anyway, she wanted to give the matter more thought.

Plaintiff called vendor again on July 22, 1955, and as a result of his persuasion vendor sent to one Emanuel A. Perry, in care of plaintiff, a nightletter which read as follows:

"Emanuel A Perry. Care Robt Daru—292 Madison Ave NYK
Seller will accept two hundred dollars to hold parcel of land, 160 acres more or less comma subject to restrictions until August eighteenth fiftyfive period if tract is not bought as package on or before August eighteenth said twohundred dollars is automatically forfeited to seller and in addition buyer

Udall & Udall, and Paul G. Rees, Jr., Paul J. Cella, Tucson, for appellant.

Norman S. Herring, Darrel G. Brown, Tucson, for appellees.

JENNINGS, Justice.

This is an appeal wherein appellant (hereinafter called plaintiff) sued appellee Martin (hereinafter called vendor) and ap-

agrees to lend seller without interest for a period of ninety days the necessary amount required to pay the balance not exceeding thirtysix hundred dollars due on sellers city water assessment period total price twentyfive thousand dollars for above package terms sixtythree hundred dollars down balance twohundred dollars per month on contract five percent prepayment clause buyer to pay customary onehalf closing fee and onehalf bank escrow fee please confirm—

Louise Majtin

209 N Tucson Blvd—"

Saturday, July 23, 1955, vendor was offered slightly more for her property by another party. Not having received any acceptance from her offer of the night before she decided to withdraw the same from Emanuel A. Perry. Vendor called plaintiff telling him that she wanted to withdraw her offer. Plaintiff said the confirmation had already been sent airmail. Vendor said that if the confirmation had not been mailed prior to their conversation the deal was off and the postmark would determine it. (At the trial of the cause this issue was resolved in favor of the vendor.)

Thereafter negotiations continued between plaintiff and vendor by letter and by wire. On August 5, 1955, plaintiff sent vendor a letter refusing the unrecorded restrictions saying "of course restrictions of record stand. If you wish to impose others I cannot commit but if they are fair to property I will ask buyer's consent." The 13th of August plaintiff wrote the Arizona Land Title & Trust Company refusing restrictions of the July 22, 1955 offer, saying " * * * if vendor wishes to incorporate any restrictions other than those of record I have already informed her of my position with respect thereto as appears. by the enclosed copy of nightletter sent August 5, 1955, from York Beach, Maine * * *."

August 15, 1955, vendor's counsel wrote plaintiff telling him that since no agreement was reached as to the restrictions vendor did not wish to enter into a contract for the sale of the property. August 19, 1955, plaintiff wrote vendor's attorney stating he had expenses involved—had received a long-distance 'phone call collect and that vendor would be held to her commitments.

August 22 vendor's counsel wrote to plaintiff telling him " * * * as it was impossible to come to any agreement of the minds vendor had decided to sell her property to another purchaser." Although vendor had an offer for a better price for the property in question she wired August 31st to the plaintiff advising his friend of the original terms. She thereupon insisted upon the original restrictions and demanded " * * * if your friend wants to buy my land on foregoing terms and conditions have him send letter of acceptance, signed by

interested purchaser and any other interested persons. Advise by western union immediately if above terms are acceptable or not and send letter or statement addressed to me personally, 209 North Tucson Blvd. by airmail special. Final closing will be held in abeyance until above said letter is received by me but not later than September 3rd."

Plaintiff again refused to disclose the principals to the transaction and refused to reduce to a certainty the matter of restrictions which, among other things, had prevented a meeting of the minds. He answered this last wire on September 1, 1955, stating " * * * not authorized to undertake new negotiations or renegotiations or new acceptance but to put you at ease I can personally assure you restrictions you want will be accepted, * * *." However, there is no recorded evidence that the above-mentioned restrictions ever were accepted. On receipt of the telegram vendor being dissatisfied therewith and particularly with the terms "new negotiations" or "renegotiations" and "new acceptance" terminated the negotiations by letter to plaintiff dated September 7, 1955. She thereupon entered into a contract to sell the property in question to vendees.

After the trial court ruled against plaintiff, he made the usual motion to vacate the judgment and for a new trial. The trial judge retired from the bench after judgment was entered and a motion was presented to another judge especially assigned for the purpose of ruling on the motion. The judge assigned to the case for the purpose of passing on the motion, denied it. Plaintiff contends that the trial court erred in denying plaintiff's motion to vacate judgment and for a new trial on the ground that having determined he was incapable of considering the motion on the merits of the grounds therein alleged and having refused to review the trial and related proceedings, the judge was without discretion or abused his discretion in refusing plaintiff a new trial.

Rules of Civil Procedure, Rule 63, 16 A.R.S., states:

"If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these Rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties. If such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

■ The actual words of the ruling by the successor judge were:

"* * * this is not a case for another trial Judge to re-consider on its merits; it appearing that the case was adequately tried and competently presented to the Court, and was fully heard by the Court; that the plaintiff's case was presented by written memorandum and that no rights of the plaintiff were prejudiced by any actions of the trial Judge; and the Court being of the opinion that Rule 63 is not intended to be used in a situation such as the present one where a final Judgment has been entered * * *."

The record and files available at the time judgment was entered contained the following: (1) pleadings, (2) depositions of the parties, Daru, Schiffman, Haas, Ryan, and Martin, (3) the various letters, telegrams and other exhibits, and (4) the complete briefs and written arguments presenting each sides' view of the matter. Memoranda filed by counsel summarized the parties' positions and referred to the exhibits. This Court will presume that the successor judge examined the files and records before him when the motion for new trial was submitted for decision. Cook v. Stevens, 51 Ariz. 467, 77 P.2d 1110.

Therefore, we will also presume that the successor judge determined that the judgment of the trial judge was tantamount to implied findings of fact and conclusions of law to support it, and that he need not go further than the record and judgment to exercise his discretion to deny the motion for new trial.

Although no findings of fact and conclusions of law were filed the Rule is nonetheless applicable for the reason that such findings and conclusions were waived and a final judgment properly entered. To cast Judge Tullar's order in the terms of this Rule, it appears he was satisfied he could not perform all of the duties imposed on a trial judge by the filing of a motion for a new trial, in that he did not search the record and weigh the evidence, and that in the exercise of his discretion, considering the factors specified in the order, he concluded not to grant a new trial.

██ That the granting of a new trial in such circumstances is discretionary and not mandatory is clear from the Rule. See also, 7 Moore's Federal Practice, § 63.06. The question remains, however, whether Judge Tullar abused his discretion by denying a new trial. He did not.

██ The extent to which a judge who did not try the case can review the weight of the evidence is severely limited, essentially because a successor judge is in no position to pass on the credibility of witnesses whom he has not seen. See 7 Moore's Federal Practice, § 63.05. This proposition was recognized by this Court in Chiracahua Ranches Co. v. State, 44 Ariz. 559, 567, 39 P.2d 640, 643, where this Court indicated, prior to the promulgation of Rule

63, that when the term of the judge who tried the case expires before he has filed the required findings to support the judgment: "* * * it would be an abuse of discretion [for the successor judge] to refuse the new trial. * * *" The Court added, however:

"* * * Under any other circumstances, the granting or refusing of the motion would be subject to review by this court under the general principle of law governing such motions." 44 Ariz. at page 567, 39 P.2d at page 643.

In Silva v. DeMund, 81 Ariz. 47, 299 P.2d 638, decided after the promulgation of Rule 63, this Court stated:

"* * * Certainly, while a succeeding judge cannot weigh evidence that was taken before his predecessor and decide facts, there is no reason why he may not use such facts found by his predecessor in perfunctorily rendering the appropriate judgment. * * *" 81 Ariz. at page 51, 299 P. 2d at page 641.

In that case all the duties preliminary to the entry of judgment had been completed by the predecessor judge, and the entry of a proper judgment by the successor judge, in accordance with the recorded decision of his predecessor, was held to be proper. Although the successor judge denied a motion for a new trial, no error was assigned in that regard and, thus, the Court did not there reach the point here in issue.

Several other assignments were set out. The first essentially was that the trial court erred in its failure to find that there was a completed agreement to sell realty and that the same was breached by the vendor.

██ After a thorough review of the evidence there are several reasons why this Court cannot agree with the plaintiff's contention. We have repeatedly held that where the evidence is in conflict we will not substitute our opinion thereof for that of the trial court. It is also true that the evidence will be taken in the strongest manner in favor of the appellee and in support of the result of the trial court, and that when there is any reasonable evidence to support it, a judgment will not be disturbed. Church v. R. B. Meredith, 83 Ariz. 377, 321 P.2d 1035; Eldridge v. Jagger, 83 Ariz. 150, 317 P.2d 942.

Let us briefly consider the evidence surrounding the July 22nd offer which vendor contended was withdrawn by the telephone conversation to plaintiff on July 23, 1955. If the vendor had not told plaintiff that she wanted to revoke the offer, it is highly unlikely that plaintiff the following day would have sent a telegram to vendor informing vendor that she could not back out. If vendor had not told plaintiff that the date on the letter, which was supposed to have been mailed to her, would determine whether or not the deal was off, it seems unlikely that plaintiff would have attempted through the postoffice to prevent the delivery of the let-

ter which was postmarked the day after the withdrawal. The fact that vendor refused to pick up the $200 at the bank on Monday morning following the telephone conversation would tend to corroborate her testimony that she was waiting to receive the letter of confirmation of the offer which she had requested, so she could determine whether or not confirmation was made prior to the withdrawal of the offer. These circumstances lend credence to the vendor's recollection of the phone call supporting the rejection of the offer and tend to discount plaintiff's recollection of the conversation to the effect that the offer was not withdrawn at that time. Inasmuch as the trial court resolved this issue in favor of the vendor, we feel there was sufficient evidence to support a revocation and any tender of money subsequent to the revocation of the offer would not be effective as an acceptance of the offer as a matter of law, but would merely be an offer to purchase which could be either accepted or rejected by the vendor. From a thorough review of the record it is evident that the offer to purchase was rejected.

Secondly, there was no contract in the instant case for the additional reason that there was no attempt by the person to whom the offer was made to accept the offer. The offer was made to one Emanuel A. Perry. Not even the plaintiff contends that the offer was accepted by Emanuel A. Perry. As was clarified during the course of the trial, the above name was a combination of first names of two parties appearing to be Manueal Zisser and Perry Zouser whom plaintiff was representing. In one portion of plaintiff's testimony he speaks as if he were not a contracting party and that his principals were the ones to be obligated. Yet these two parties did not accept the offer. On the other hand, both in plaintiff's complaint and in his testimony he held himself out as a contracting party. Yet the offer was not made to him. Therefore he was not in a position to legally accept.

When an offer is made to a particular person or persons the law is clear that no one else can accept the offer and it is not transferable by them to another. 13 C.J. 273, Contracts, Section 69, 17 C.J.S. Contracts § 40, Citing cases. Neither is there any ambiguity in the offer which would allow of any interpretation making plaintiff an offeree. The offer was made to Emanuel A. Perry, in care of Robert Daru (plaintiff). This wording definitely excludes plaintiff as a contracting party. Therefore, any attempted acceptance of vendor's offer by plaintiff as a principal, either individually or with others, had no legal effect in binding vendor to a contract.

Could the plaintiff have accepted the contract in the capacity of an agent? We must answer no. This Court has previously set out four distinct ways that agency may be proven, namely, by con-

tract, by facts which raise the implication of agency, by ratification, and by estoppel. Bristol v. Moser, 55 Ariz. 185, 99 P.2d 706. Plaintiff has failed to establish his agency or authority to represent the offerees by any of these methods.

■ We note that the attempted acceptance was in the final analysis not that required by the offeror. The offer asked for two things: 1. payment of money, and 2, promise to lend the offeror a sum of money interest free. Therefore, if there were no other defect, on this basis alone the contract was obviously defective. Although there was a payment of money the vendor was not obliged to hold her property open to the offeree until the offeree had complied in actuality with the two requests. Since there was no promise to lend the vendor the sum of money requested and no money made available in escrow for that particular purpose, there was no option granted to the offeree and the vendor had no obligation to sell. Any subsequent tender of money to the vendor constituted an offer to the vendor and not an acceptance of the original offer.

■ There are many other evidentiary points in support of the trial court's holding which we find it unnecessary to discuss. Suffice it to say we find that the judgment was supported by sufficient evidence.

Plaintiff's second assignment of error was that the trial court erred in granting judgment for defendants and in denying plaintiff's motion for new trial on the ground and for the reason that plaintiff was prejudiced by the trial court's neglect, denial or refusal, after stipulation, to allow plaintiff the right to argue or summarize his case.

■ Certainly the most accurate analysis of the various cases touching upon this issue is that they have produced a variety of results. A right to argue the case to the court is necessarily subject to reasonable regulation by the trial court. For this reason it is a laborious task if not nigh impossible to delineate an undeviating line of distinction between proper denial of a right to present argument and an unreasonable regulation of argument. Despite the common assumption that presentation of argument is a right, it is not one of an absolute nature except where expressly made so by constitutional or statutory provision. See annotation 38 A.L.R.2d 1400. In this regard Rule 51(c), Rules of Civil Procedure, is only applicable to arguments in jury trials.

It is true that plaintiff did not present an oral argument and that according to the record plaintiff did specifically ask to reserve the privilege of summation. The record shows that at the close of the trial on October 17, 1956, the following order was entered:

"It is ordered that plaintiff has three weeks to submit his opening memorandum, and defendants have two weeks to reply, thereafter the plaintiff has ten days to reply.

"It is agreed by counsel and court that after memorandums are submitted a date will be set between counsel for oral argument of the case, *if requested by the court or any counsel.*" (Emphasis ours.)

On January 30, 1957, after opening memorandum and reply had been filed, plaintiff sent a letter to the court, and among other items, wrote as follows:

"The Court's attention is called to the second paragraph on page 1 of the plaintiff's brief, already filed, wherein it is pointed out that the plaintiff in waiving a jury impaneled upon defendants' demand, expressly reserved his right to final oral argument. In view of the extraordinary delay, the *undersigned is reluctant to press this matter as one of right,* but it will be recalled that the defendants handled the time at the end of plaintiff's case, so that both counsel for the defendants were heard orally but plaintiff was not heard at all." (Emphasis ours.)

When plaintiff referred to the extraordinary delay, he referred, among other things, to the fact that he had not complied with the time element of the above order in that his opening memorandum was not filed until nearly five weeks after said order. It seems that had he been sincerely anxious to present his closing oral argument he would have filed his memorandum more promptly in order that the court would be in a position to set a date.

The trial judge's reply letter dated February 5, 1957, sheds some light upon the extent to which the trial judge understood the issues and the fairness and completeness of the trial, and reads in part:

"* * * I will leave it to your discretion as to how soon you file the reply within the next 30 days, and further leave to you the discretion as to what the same should contain and whether or not you want to have final oral argument.

"I believe that most of the arguments have been made heretofore, but in the event that you desire such argument, please advise me and counsel at any time you plan to be in Tucson and I will be pleased to journey there to hear the argument. Until then I await your reply or indication that you do not intend to file the same."

On February 24, 1957, some nineteen days later, the plaintiff sent a communication to the trial judge, in which the following was contained:

"If it would seem that both oral argument and additional brief is too much, plaintiff prefers oral argument

*at any time*, suiting the Court's convenience." (Emphasis ours.)

Aware of the correspondence between plaintiff and the trial court judge, the defendants' counsel on February 28, 1957, addressed a letter to the court in which he stated that oral argument would be all right at any time suiting the court's convenience, except between the 6th and 19th of March. In contradiction to the minute entry of March 29, 1957, which ordered that oral argument set for March 30, 1957, be vacated, plaintiff vehemently declares in his reply brief that March 30, 1957 was never set as the day for final argument and that no day was ever set. However, the Abstract of Record (p. 75) clearly indicates that there was consideration of that date for the oral argument and that plaintiff personally advised his counsel that March 29th "seemed all right but he could not be certain as to March 30th."

 From the foregoing account it becomes very clear that the trial court judge was doing everything in his power to allow the plaintiff an oral argument. On March 26th the trial court judge was in Tucson, Arizona. He advised plaintiff's counsel that he would be available to hear the argument that afternoon. Plaintiff contends that he received a telephone call from his attorney at 2:05 p. m. advising him to come down to the courthouse by 4 o'clock for oral argument. Plaintiff's contention is that since he had just been horseback riding and was not dressed that two-hours notice made it physically impossible for him to comply with the judge's request. Yet, plaintiff had been residing in the Tucson area for a considerable length of time and had not apprised the judge of a date on which he wished to be heard. Rather in response to the judge's letter of February 5, 1957, plaintiff had stated that he would like oral argument at any time suiting the court's convenience. While two-hours notice of proceedings appears to be rather short, certainly the trial judge was only trying to accommodate the plaintiff and directly complying with plaintiff's wishes. Accordingly we must hold that plaintiff's failure to present oral argument was not due to the court's neglect, denial or refusal and consequently was not so prejudicial as to require reversal of the trial court's judgment.

 In his third assignment of error, plaintiff alleges that the court abused its discretion in refusing plaintiff a continuance for more than two days. This case was filed October 11, 1955. On January 23, 1956, it was set to be tried October 2, 1956. Counsel for defendants, Schiffman, Haas and Ryan withdrew from the case and other counsel was substituted on August 30, 1956. Even after this change taking of depositions was not started until late in September; they were lengthy and time consuming. Depositions of Miss Martin, Schiffman and Daru were received by

the clerk during the trial on October 4, 8, and 9 respectively. The trial covered a period of approximately two weeks, during which time counsel for both sides had from Friday, October 5th to Tuesday, October 9th, and Thursday October 11th to Monday, October 15th, to research and study the depositions. A motion for continuance is addressed to the discretion of the trial court. Merryman v. Sears, 50 Ariz. 412, 72 P.2d 943; Rule 42(c), Rules of Civil Procedure. Considering the above facts we find that the trial court did not abuse its discretion.

Plaintiff's fourth assignment of error was that the court erred in sustaining an objection to a question propounded to Miss Martin by plaintiff. Plaintiff contended that the question was proper and competent calling for a relevant answer. The court sustained the objection on the basis that the question called not for just the intent of Miss Martin, but rather called for a legal conclusion as to the effect of the telegraphic offer and whether or not it had been withdrawn or accepted. Whether the court's ruling was correct is unimportant to the final outcome of the case, because Miss Martin testified fully about every phase of the transaction and the events involved therein. Mr. Keith Winn testified completely. Mr. Daru testified and explained at length. All the telegrams, letters and exhibits concerning the matter were before the court.

In such instance, it is not prejudicial error to refuse to permit a question to be asked and answered where the whole subject has been fully developed by other evidence. Daly v. Williams, 78 Ariz. 382, 280 P.2d 701; Wigley v. Whitten, 78 Ariz. 224, 278 P.2d 412. This is especially true where testimony, if admitted, would not have affected the result. J & B Motors v. Margolis, 75 Ariz. 392, 257 P.2d 588, 38 A.L.R.2d 946. The court's action in the instant case was therefore not prejudicial error.

Plaintiff set forth as a fifth assignment of error that the cumulative legal effect of the errors set out in two and three above, amounted to lack of due process under the Federal Constitution, Amend. 14. As we find no prejudicial error in the above-mentioned assignments, we hold this assignment of error to be without merit.

Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., LOCKWOOD, J., and HENRY S. STEVENS, Superior Court Judge, concurring.

Note: UDALL, J., being disqualified, the Honorable Henry S. Stevens, Judge of Superior Court, Maricopa County, was called to sit in his stead and participate in the determination of this appeal.