380 P.2d 1003

Joseph NORDALE, individually and as a Licensed Real Estate Broker, and Joseph Nordale Realty and Insurance Company, a corporation, Appellants,

v.

Tillie M. FISHER, a widow, Appellee.

No. 6889.

Supreme Court of Arizona.

In Division.

April 24, 1963.

Fickett & Dunipace, Tucson, for appellants.

William Gordon, Tucson, for appellee.

RAUL H. CASTRO, Superior Court Judge.

This is an action by plaintiffs-appellants against defendant-appellee for the recovery of a real estate commission based on a claim that defendant as owner gave plaintiff broker a seventy-five day exclusive listing and then sold the property to a buyer within a seventy-three day period. Plaintiffs filed a complaint alleging two causes of action. Joseph Nordale filed in his individual capacity as a licensed real estate broker and as a broker for Joseph Nordale Realty and Insurance Company, an Arizona corporation.

It is undisputed that on December 9, 1957 defendant gave plaintiff broker a listing contract for a term of fifty days.

The listing was a combination of an exclusive listing and also a non-exclusive listing on a printed form. The top portion of the listing was non-exclusive and was for fifty days. The defendant signed the "open" listing on the line indicated. The bottom portion of the listing being exclusive, was also signed by the defendant. The property was not sold during the first listing period. A new listing was given by the defendant to the plaintiffs on March 3, 1958. The same type of listing agreement was used on the second listing. The top portion was for sixty days "open" and the bottom portion for seventy-five days. Defendant's signature does not appear on the sixty day listing, but does appear on the exclusive seventy-five day listing. Defendant admits signing the second listing but denies that the number seventy-five appeared on the instrument when she signed. Her testimony was that plaintiffs told her it was a sixty day extension and that when she signed the only figure appearing was the number sixty. The sale by defendant to Maurice Cohen on May 15, 1958 was within seventy-five days of the second exclusive listing, but beyond sixty days of the second listing. Plaintiffs claim a commission on the sale.

Two days before the trial plaintiffs moved for continuance on the ground that Herbert Humiston, salesman who had procured defendant's signature, was ill in Los Angeles and unable to testify. The court below

granted the continuance only if plaintiff released an outstanding garnishment against the escrow agent in the sale to Cohen. Plaintiffs refused to release the garnishment. On the trial day, plaintiffs again moved for a continuance. The motion was denied.

Plaintiffs made the following assignments of error: (1) The court erred in denying motions for continuance; (2) The court erred in entering judgment against plaintiffs on both counts for the reasons: (a) The judgment was contrary to the evidence; (b) The refusal to grant a continuance was capricious and prejudicial to plaintiffs since it prevented them from interrogating their key witness.

■ Continuances in Arizona come within the purview of Rules 42(c) and 42(d) of Arizona Rules of Civil Procedure, 16 A.R.S. Rule 42(c) reads:

"When an action has been set for trial on a specified date by order of the court, no postponement of the trial shall be granted except for sufficient cause, supported by affidavit, or by consent of the parties, or by operation of law."

As can be seen, a motion for continuance is addressed to the sound judicial discretion of the trial court predicated on good cause. Daru v. Martin, 89 Ariz. 373, 363 P.2d 61; Merryman v. Sears, 50 Ariz. 412, 72 P. 2d 943.

Rule 42(d) reads:

"* * * If the ground for the application is the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him. The application in either case shall also state that the postponement is not sought for delay only, but that justice may be done. If the adverse party admits that such testimony would be given and that it will be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be postponed. Such testimony may be controverted as if the witness were personally present."

The question becomes whether the lower court abused its discretion in refusing to grant continuances.

■ The trial was set for hearing on its merits for March 11, 1959. On March 9, 1959, plaintiffs filed a motion for continuance and attached thereto an affidavit by Joseph Nordale. The affidavit did not comply with the requirements prescribed in Rule 42(d). Whether this matter was presented to the court is not indicated by the record but it is plain there could be no abuse of discretion since the affidavit did not comply with the rules because it did not state what was expected to be proved by the witness.

■ As stated, two days later plaintiffs again moved for a continuance. On this

same day an affidavit signed by Joseph Nordale was filed with the court. This time the affidavit fully complied with the requirements of Rule 42(d) of Rules of Civil Procedure. In recapitulation, the contents of the affidavit indicated the following: that Herbert Humiston was now a resident of Los Angeles, California and was taking daily treatments for cancer at the California Lutheran Hospital and was unable to appear to testify in Tucson. In substantiation of this fact, a telegram was attached to the affidavit from Dr. Hugh F. Hare of Los Angeles; that the witness would testify that he inserted the number "seventy-five" days in the listing of March 3, 1958 prior to obtaining the defendant's signature; that the listing was not changed, altered nor any additions made thereto after defendant signed it.

During the argument for continuance, plaintiffs' counsel expressed to the court that Mr. Humiston appeared at their office about seven days before trial to clarify certain matters concerning his wife's estate. He came to Tucson and departed the same day by plane. Mr. Humiston was then ill. No effort was then made by plaintiffs to depose him. Counsel instead chose the route of obtaining medical confirmation so that a continuance might be sought.

The trial court was influenced in its ruling by the following facts: (1) defendant had an out-of-state witness available to testify; (2) the previous order had been conditioned on releasing the garnishment which was refused; (3) the subject matter at issue had been covered in a deposition of Herbert Humiston. As to the latter, a review of the deposition discloses that Humiston's testimony pertaining to material matters was fully covered. Plaintiffs chose later not to avail themselves of the opportunity to perpetuate their examination of the witness. We are unable to see where much more would be added than what appears on the deposition nor where plaintiffs were prejudiced. In view of the foregoing, we are of the opinion that the trial court did not act in an arbitrary nor a capricious manner in refusing to grant a continuance.

We shall now consider the merits of the second assignment of error, namely that judgment should not have been entered against plaintiffs on both counts because it was contrary to the evidence in the case and because of insufficient evidence. After reviewing the evidence, there are several reasons why we cannot agree with plaintiff's contention. This Court has many times held that where evidence is in conflict we will not substitute our opinion for that of the trial court. Daru v. Martin, supra. It is also well known that evidence will be taken in the strongest manner in favor of the appellee and in support of the result of the trial court, and where there is any reasonable evidence to support it, a judgment will not be disturbed. Daru v. Martin, supra; Church v. Meredith, 83 Ariz. 377,

321 P.2d 1035; Eldridge v. Jagger, 83 Ariz. 150, 317 P.2d 942.

Let us consider the evidence to determine whether there was reasonable evidence to support the judgment of the lower court. Defendant's husband died sometime in 1957 so she decided to sell her house. She visited plaintiff, Joseph Nordale, in his office in Tucson sometime in November or December 1957 and agreed to list the property with him. A few days later a Mr. Herbert Humiston went to defendant's home and requested her to sign the listing on two places for a period of fifty days. The house was not shown until February 1958. Shortly prior to the open house Mr. Nordale came to defendant's home and obtained data for purposes of advertising the home. Defendant saw Mr. Nordale one time after that to advise him she intended to go to Detroit.

■■■■ We prefer to first dispose of plaintiffs' second count to simplify the facts. Plaintiffs' second cause of action alleges that they brought together the defendant as seller and Maurice Cohen as buyer and that they were the procuring cause in the culmination of said sale. Before plaintiffs can prevail as to this second count, they must show by a preponderance of evidence that they were the efficient, proximate and procuring cause of the sale. Bowser v. Sandige, 74 Ariz. 397, 250 P.2d 589; Porter v. Ploughe, 77 Ariz. 33, 266 P.2d 749. Furthermore, whether a broker is a procuring cause of sale of property listed with him is, usually, a question of fact. Clark v. Ellsworth, 66 Ariz. 119, 184 P.2d 821. The trial court heard the facts and in doing so ruled against the plaintiffs. We agree with the lower court because on reviewing the record, we find the following: the purchaser Cohen testified he never met plaintiff Nordale nor any member of his staff prior to his purchasing the property. He met Nordale for the first time when his deposition was being taken on June 24, 1958. The property was sold on May 15, 1958. A Mrs. Eva Hack corroborated the fact of having told Cohen about the availability of defendant's property and introduced the purchaser to defendant. Plaintiffs' key witness, Humiston, never saw nor met the purchaser prior to the sale of the property. Plaintiff Nordale stated that about the last week of February 1958 the purchaser came to his office. That about closing time, a man drove to his office and introduced himself as Cohen. That Cohen had been to the defendant's property and was advised by defendant to see plaintiffs about the details of the property. Purchaser was advised that the asking price was $45,000, but could perhaps be purchased for less. Purchaser stepped out the door and drove away. Nordale left town the next day and left instructions with his salesman Humiston to contact Cohen. Humiston never contacted Cohen. As stated before, when there is a conflict in evidence we will not substitute

our opinion for that of the trial court. Daru v. Martin, supra. We agree with the lower court's finding as to count two of the complaint.

As to count one, plaintiffs' view is that there was admitted into evidence an exclusive listing contract for the sale of property, dated March 3, 1958 for the period of seventy-five days and signed by defendant; that the property was sold by the defendant directly to a third party on May 15, 1958 and was within the seventy-five day period. Therefore, on the basis of this exclusive listing they are entitled to their commission. Plaintiff contends that if the defendant disputes that the figure "seventy-five" did not appear on the contract at the time of her signing it, then it was the defendant's burden to prove that fact.

In order to resolve this problem, we shall consider the law of alteration of instruments. Plaintiffs rely almost entirely on legal propositions advanced in a promissory note case of First National Bank of Morrill v. Ford, 30 Wyo. 110, 216 P. 691, 31 A.L.R. 1441. It is a scholarly opinion attempting to differentiate between what it "burden of proof", "burden of evidence" and "burden of going forward". Semantics becomes a factor in that case. Great reliance is placed by plaintiffs on the following general propositions expressed in the Ford case: (1) The burden of proof is upon the party asserting the affirmative of an issue, including any negative proposition which such party might have to show. Having alleged the truth of a matter in issue, he must prove it. The party denying his allegations cannot have this burden at any time during the trial. (2) The burden of proof never shifts, though the burden of going forward with the evidence may shift at various times during the trial from one side to the other, as the evidence is introduced by the respective parties. (3) The presumption of innocence, that men act in good faith and not unlawfully should operate in favor of plaintiff. The defense of an alteration of an instrument is a true affirmative defense which must be proved by the party setting it up. This Court stated that alteration of an instrument is not in its true sense a plea in confession and avoidance, but is similar to it, and therefore they would call it an affirmative defense. It is well noted that there are respectable legal authorities to the contrary. See Simpson v. Davis, 119 Mass. 269, 20 Am.Rep. 324; Mindell v. Goldman, 309 Mass. 472, 35 N.E.2d 669; Farmers Loan & Trust Co. v. Siefke, 144 N.Y. 354, 39 N.E. 358.

Defendant cites as authority for her cause the leading promissory note case of Foss v. McRae, 105 Me. 140, 73 A. 827, cited in 9 Wigmore on Evidence 441 (3rd ed.), § 2525. The issue in that case was that at the time of execution and delivery of the instrument it did not contain the four words "and will guarantee them". There was

evidence on both sides of the issue. The Court in that case held as follows:

"The issue of alteration now having been raised, it became her duty to assume the burden upon all the evidence of persuading the jury that the words of guaranty were upon the paper when it was executed.

"Now, while the burden of evidence may be said to have shifted from the plaintiff to the defendant, when she had made out a prima facie case, and from the defendants to the plaintiff, again, when their evidence had overcome the prima facie case, the burden of proof had not changed at all. It was incumbent upon the plaintiff, in the end, upon all the evidence, however it may have shifted from one side to the other, to establish the truth of the allegation upon which she sought to recover, that the instrument contained the disputed words.

" 'Burden of proof' and 'burden of evidence' are often confused. The phrase 'burden of proof' is, in fact, more philosophical than practical. It means generally that a plaintiff, however often the evidence shifts, must, upon the whole, persuade the jury, by legal evidence, that his contention is right. The risk of nonpersuasion is all the time upon him. If he fails to persuade, he loses his case. The risk of

nonpersuasion is the burden which he must assume." 73 A. at 828.

In Wigmore, supra, we find the following:

"It used sometimes to be said that an *alteration* (*i. e.* by erasure or interlineation), if apparent on the face of an instrument, placed on the offering party the *burden of explanation* by evidence. It was also (but inconsistently) said by some that the alteration was to be *presumed innocent, i. e.,* made before execution, unless particular circumstances of suspicion were apparent. * * *

"But the modern tendency is to avoid stating the problem in the form of such rules with exceptions, and, in particular, to abandon the so-called presumption against fraud and in favor of innocence, by which the alteration of a deed is presumed to have been made before execution; and to raise no genuine presumption in that regard (*ante* § 2485). The first burden would thus be determined by the pleadings, and the question would usually go to the jury, upon all the evidence, whether the party claiming a specific tenor for the document has proved his case *i. e.* proved that the erasure or the interlineation did or did not exist before execution; although the second burden (*ante* § 2487), *i. e.,* of producing evidence, might be shifted by particular circumstances, under the ruling of the judge

as to a sufficiency of evidence or a presumption."

Inasmuch as plaintiffs look to Wyoming for persuasiveness, we note that the Wyoming Court has recently held that the modern and best reasoned view indulges in no presumptions as to the time of the alteration and by whom, but the entire question is for the trier of fact to consider in the light of all the evidence. Hundley v. Neely, (Wyo.), 365 P.2d 196; See also Fensler v. Sterling, 132 Ohio St. 498, 9 N.E.2d 283; 2 Am.Jur. 676, Alteration of Instruments, § 116; 44 A.L.R. 1244, 1254; 3 C.J.S. Alteration of Instruments § 90c(2) (a), p. 998.

After an examination of the legal authorities cited, we adopt the modern tendency as enunciated in 9 Wigmore on Evidence 441 (3rd ed.), § 2525 as being the most logical and just.

 The pertinent facts with reference to the execution of the listing contract by defendant are as follows: On March 3, 1958 Mr. Humiston, plaintiffs' salesman, called defendant Fisher and stated he was coming over so that she might sign an extension for sixty days more. At defendant's home Mr. Humiston assured defendant that plaintiff, Mr. Nordale, wanted a sixty-day extension on the listing. The salesman pointed out the place for her signature and she signed. Mrs. Fisher had a house guest, Mrs. Marguerite Stark, who corroborated these facts. Defendant admits that she read the instrument before she signed it, but that the only figure appearing on the instrument was the number "sixty". Defendant Fisher further testified that the figure "seventy-five" was not on the listing at the time of execution. On the other hand, Mr. Humiston in his deposition stated that the listing of March 3, 1958 was prepared in his office by him at the request of Mr. Nordale. He inserted the figure "sixty" on top of the instrument then Mr. Nordale advised him to insert "seventy-five" to cover the winter season. Mr. Humiston admitted going to defendant's home and that Mrs. Stark was present, but in his opinion could not have heard the conversation. Mr. Humiston stated he just asked defendant to sign the new listing as it was for a longer term than the first listing. The second listing was to cover the winter season. He doesn't remember pointing out the "seventy-five days" to defendant nor mentioning it to her. Nevertheless, the listing in dispute and in evidence does have "sixty days" on the top portion and "seventy-five days" on the bottom portion of the instrument. Defendant claims the figure "seventy-five" was inserted subsequent to the execution.

The instrument was prepared by the plaintiffs in their office. On the face of the listing there appears the figure "sixty" and also the figure "seventy-five". Certainly on the very face of the instrument there appears an apparent inconsistency. Without

ever considering any of the evidence introduced and just upon examination of the instrument there is enough of an inconsistency to raise a doubt in our minds as to the genuineness of the listing. In any event, it appears all the available evidence was before the trial court. It concluded and determined from such that plaintiffs failed to persuade him, therefore, they must fail. We find sufficient evidence to support the finding of the lower court.

Judgment affirmed.

STRUCKMEYER and JENNINGS, JJ., concur.