NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

NORTH STAR CHARTER SCHOOL, INC., an Arizona corporation; KURT HUZAR, as its authorized representative and individually; and PIERCE ROBINSON, *Plaintiffs/Appellants*,

*v.*

VALLEY PROTECTIVE SERVICES, INC., an Arizona corporation; DANIEL JAMES VOLLMER, *Defendants/Appellees*.

VALLEY PROTECTIVE SERVICES, INC., an Arizona corporation, *Counterclaimant/Appellee*,

*v.*

NORTH STAR CHARTER SCHOOL, INC., an Arizona corporation, *Counterdefendant/Appellant*.

No. 1 CA-CV 15-0549
FILED 12-13-2016

Appeal from the Superior Court in Maricopa County
No. CV2010-022630
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Stanley M. Slonaker Attorney at Law, Phoenix
By Stanley M. Slonaker
*Counsel for Plaintiffs/Appellants/Counterdefendant*

Burch & Cracchiolo P.A., Phoenix
By Gregory A. Rosenthal
*Counsel for Defendants/Appellees/Counterclaimant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Randall M. Howe and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1** North Star Charter School, Inc. (North Star), Kurt Huzar, and Pierce Robinson appeal from final judgments entered in favor of Valley Protective Services, Inc. and its employee, Daniel Vollmer (collectively, VPS), on all claims and counterclaims. For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

**¶2** The material facts are largely undisputed. VPS is an Arizona corporation operating a security guard company licensed by the Arizona Department of Public Safety. *See* Ariz. Rev. Stat. (A.R.S.) § 32-2601 to -2642.[2] At all relevant times, VPS employed Vollmer as a security guard.

**¶3** North Star is an Arizona non-profit corporation that operates a charter school in Phoenix. At the relevant time, Huzar served as North

---

[1] We view the evidence, and all inferences to be drawn therefrom, in the light most favorable to Appellants, the parties against whom summary judgment and judgment as a matter of law were entered. *See Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315, ¶ 2 (App. 1998) (motion for summary judgment); *Monaco v. HealthPartners of So. Ariz.*, 196 Ariz. 299, 302, ¶ 6 (App. 1999) (motion for judgment as a matter of law).

[2] Absent material changes from the relevant date, we cite a statute's current version.

Star's president and a trustee on the school's three-member Board of Trustees, Robinson was the school's security director, and non-party Aldine Dickens was also a trustee. Although Huzar was specifically tasked with North Star's day-to-day operations and served as the designated representative with respect to issues involving the school's charter, the Board retained the power, as set forth in North Star's bylaws, "[t]o conduct, manage and control the affairs and activities of the corporation," "[t]o elect and remove trustees," and "[t]o enter into contracts, leases and other agreements which are, in the Board's judgment, necessary or desirable in obtaining the purposes of promoting the interests of the corporation."

¶4        In April 2009, Dickens and another Board member noticed a special meeting for "the restoration, removal if appropriate and election of persons off and to the Board of Directors of North Star Charter School, Inc." Purporting to act on behalf of North Star, Dickens entered into a Security/Courtesy Patrol Services Agreement (the Agreement) with VPS to provide four security guards at the April 29, 2009 meeting. Dickens signed the Agreement as "Trustee" of North Star and "represent[ed] and warrant[ed] that [she] ha[d] the authority to hire VPS to render service" at the school. She later advised VPS that Huzar would be terminated at the meeting and gave detailed instructions, on North Star letterhead, regarding VPS's duties in light of how students, teachers, office staff, and board members might move around the school. The Agreement included the following indemnification clause:

> THIRD-PARTY INDEMNIFICATION: In the event any person not a party to this Agreement shall make any claim or file any lawsuit against VPS for any reason relating to [VPS]'s duties and obligations pursuant to this Agreement, Customer agrees to indemnify, defend and hold VPS harmless from any and all such claims and lawsuits, including the payment of all damages, expenses, costs and attorney's fees.

Believing that the event "would lead to a heated exchange at the very least," and that it would therefore be best to have law enforcement available at the meeting to "make sure nothing crazy occurred," Robinson left a message for local law enforcement advising of the upcoming meeting.

¶5        At approximately 3:00 p.m. on April 29, 2009, Robinson observed Dickens, accompanied by four VPS security guards, including Vollmer, enter the school. At the time, Vollmer had a handgun in the holster of his duty belt. Dickens directed a guard to "keep an eye on" Robinson to make sure he did not touch anything, and Huzar arrived soon

3

after. The guards ignored Robinson and Huzar's requests to leave and, for a time, prevented them from entering the meeting room. At 3:09 p.m., Phoenix Police officers responded to a call of "unwanted guests" at the school. Vollmer immediately secured his handgun in his vehicle "eliminating any handguns at the facility" before the meeting began. The officers determined the dispute was a civil matter and left the premises.

¶6　　　　Meanwhile, at 3:30 p.m., Dickens called the meeting to order. Over Huzar's objections, Dickens moved for a vote that resulted in Huzar's termination from his positions at North Star. Vollmer escorted Huzar to his office to remove his personal belongings and instructed Huzar and Robinson not to touch anything. Immediately thereafter, Dickens and other non-parties at her direction changed the school's computer access codes and door locks while the VPS guards stood by. VPS remained on scene while Dickens left the premises to change the signatory on North Star's bank accounts.

¶7　　　　The Arizona Attorney General later determined the April 29, 2009 meeting was invalid and the actions taken therein had no legal effect. Eventually, Huzar obtained a workplace harassment injunction against Dickens, and in June 2009, Huzar and Robinson resumed their duties at North Star.

¶8　　　　In July 2010, Appellants filed a complaint against VPS alleging they suffered damages resulting from trespass, assault, conversion, trespass to chattels, negligence, negligent supervision, and intentional infliction of emotional distress, all of which were premised on the theory that Dickens' actions during and after the meeting "occurred only because the on-scene muscle provided by VPS guards prevented interference and protected Dickens and those acting in concert with her."[3] VPS counterclaimed against North Star, alleging it was obligated under the Agreement to indemnify, defend, and hold VPS harmless from the claims brought by Huzar and Robinson and was in breach of the contract for failing to do so.

¶9　　　　Between April 2013 and January 2014, VPS moved for summary judgment on all claims and counterclaims. After briefing and oral argument, the trial court entered judgment in VPS's favor on each count except for Huzar's and Robinson's assault claims. Appellants recertified the only remaining claim as subject to compulsory arbitration, and an

---

[3]　　　　Appellants voluntarily dismissed a claim for negligent infliction of emotional distress in February 2011.

4

arbitrator was appointed in July 2014. *See* A.R.S. § 12-133. The parties did not proceed to arbitration within the 120-day deadline, Ariz. R. Civ. P. 74(b), and in January 2015, the court found no good cause for the delay and dismissed the assault claim for lack of prosecution. The court also awarded VPS attorneys' fees and costs as the successful party in a contract action, as well as double its taxable costs as a sanction pursuant to Arizona Rule of Civil Procedure 68. Appellants timely appealed the final judgment, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I. Summary Judgment

¶10 Appellants first argue the trial court erred in entering summary judgment in VPS's favor on various claims. Summary judgment is appropriate "if the facts produced in support of the claim or defense," viewed in the light most favorable to the party against whom judgment is entered, "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); Ariz. R. Civ. P. 56(a). Moreover, a motion for summary judgment should not be denied simply upon speculation that some doubt, scintilla of evidence, or dispute over irrelevant or immaterial facts "might blossom into a real controversy in the midst of trial." *Shaw v. Petersen*, 169 Ariz. 559, 560-61 (App. 1991) (quoting *Orme Sch.*, 166 Ariz. at 311).

¶11 Whether a genuine issue of material fact exists to preclude summary judgment is a question of law we review *de novo*. *See Parkway Bank & Tr. Co. v. Zivkovic*, 232 Ariz. 286, 289, ¶ 10 (App. 2013) (citing *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180 (App. 1997)). We also review *de novo* the trial court's application of the law, *id.*, and we will affirm if judgment is correct on any basis supported by the record, *Mutschler v. City of Phx.*, 212 Ariz. 160, 162, ¶ 8 (App. 2006) (citing *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986)).

### A. Dickens' Authority: Trespass and Breach of Contract

¶12 Appellants first argue a genuine issue of material fact exists as to Dickens' authority to either: (1) bind North Star to a contract with VPS which would give rise to the breach of contract counterclaims, *see Thomas v. Montelucia Villas, L.L.C.*, 232 Ariz. 92, 96, ¶ 16 (2013) ("To bring an action for the breach of the contract, the [injured party] has the burden of proving *the existence of the contract*, its breach and the resulting damages.") (emphasis

5

added) (citing *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)), or (2) grant VPS permission to enter the school premises to provide security services, thereby vitiating the trespass claim, *see Barry v. S. Pac. Co.*, 64 Ariz. 116, 120-21 (1946) ("A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.") (quoting Restatement (Second) of Torts § 329 (1965)).

**¶13** It is well-settled that a principal is bound only by the acts of an agent for which that agent has authority — whether express, apparent, or implied. *See Tway v. S. Methodist Hosp. & Sanitorium of Tucson*, 48 Ariz. 490, 495 (1936); *Aetna Loan Co. v. Apache Trailer Sales*, 1 Ariz. App. 322, 324 (1965) (citations omitted); Restatement (First) of Agency § 140 (1933). The record does not contain any evidence of direct communication between North Star and Dickens, or North Star and VPS, upon which to conclude Dickens had express or apparent authority to engage VPS's services on North Star's behalf. Therefore, we focus solely upon whether Dickens had implied authority to enter into the contract.

**¶14** Implied authority does not depend upon communication from the principal but derives from the agent's "actual authority . . . to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities . . . ." Restatement (Third) of Agency § 2.01 cmt. b (2006), cited favorably by *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 29 (App. 2007). "The test in cases where implied authority is relied upon is whether, *under all the circumstances of the particular case*, the party relying on such authority acted as a reasonable and prudent man who knows that he is dealing with an agent, in ascertaining the extent of the authority of that agent." *Lois Grunow Mem'l Clinic v. Davis*, 49 Ariz. 277, 285 (1937). If the agent has implied authority by virtue of his position within the corporation, "[i]t makes no difference that the agent may be disregarding his principal's directions, secret or otherwise, so long as he continues in that larger field measured by the general scope of the business [e]ntrusted to his care." *Nogales Serv. Ctr. v. Atl. Richfield Co.*, 126 Ariz. 133, 137 (App. 1980) (quoting *Kidd v. Thomas A. Edison, Inc.*, 239 F. 405, 407 (S.D.N.Y. 1917)). The third party bears the burden of showing that its reliance upon the agent's authority was reasonable. *See Miller v. Mason-McDuffie Co. of S. Cal.*, 153 Ariz. 585, 590 (1987) (citing *Lois Grunow*, 49 Ariz. at 284) (citations omitted). Whether an agency relationship exists is a question of law for the court when the material facts from which it is to be inferred are undisputed. *Cote v. A.J. Bayless Mkts., Inc.*, 128 Ariz. 438, 444 (App. 1981) (citing *Warren v. Mangels Realty*, 23 Ariz. App. 318, 321 (1975)).

¶15        Here, there is no dispute that Dickens was a member of the Board or that the business of the Board included participating in meetings and removing trustees, officers, or employees of the corporation.  Hiring a security service to facilitate the Board's performance of those functions is incidental to her express duties; Robinson himself believed it appropriate to put law enforcement on notice of the pending meeting even before learning that VPS would be present.  Therefore, it was within Dickens' implied authority to act, as a trustee of the Board, on behalf of North Star in contracting with VPS.

¶16        Appellants argue a dispute exists regarding whether VPS reasonably relied upon Dickens' authority because VPS admitted it did not investigate North Star's bylaws or Arizona Corporation Commission files.  We disagree.  VPS was entitled to rely upon "titles implying general powers," such as director and trustee — titles North Star did in fact bestow upon Dickens.  *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.,* 165 Ariz. 1, 7-8 (App. 1990) (citing *Koven v. Saberdyne Sys., Inc.,* 128 Ariz. 318, 322 (App. 1980)).  Appellants have not presented any facts suggesting VPS should have undertaken a detailed investigation into Dickens' authority.  Dickens acted in conformity with her asserted position as a trustee:  she had knowledge of and access to non-public areas of the school, gave directions to staff and vendors, and called and ran a Board meeting in a classroom at the school in which other persons of authority participated without complaint.  Huzar and Robinson's actions were also consistent with persons who were being removed from positions of authority.

¶17        In view of the foregoing, we conclude that Appellants failed to raise any genuine issues of material fact with regard to the authority of Dickens to bind North Star to the contract with VPS.  When VPS entered the premises to provide security services on April 29, 2009, it did so pursuant to a valid contract with North Star, lawfully entered into through its agent acting under color of her implied authority. Given this conclusion, Appellants cannot prove VPS acted without permission to enter the premises, and summary judgment was properly entered in VPS's favor on the trespass claim. *See State ex rel. Purcell v. Superior Court (Naylor),* 111 Ariz. 582, 584 (1975) (defining trespass at common law as "any unauthorized physical presence on another's property") (citing 75 Am. Jur. 2d Trespass § 10 (2016)).  Appellants do not dispute the remaining elements of VPS's breach of contract claims, and summary judgment in VPS's favor on those claims was also proper.

### B. Concerted Conduct: Conversion and Trespass to Chattels

¶18 Appellants next argue a genuine issue of material fact exists regarding whether VPS acted in concert with Dickens to interfere with North Star's property rights that would prevent summary judgment in VPS's favor on the claims for conversion and trespass to chattels. However, Appellants did not raise accomplice liability or conspiracy in their direct claims against VPS or in response to the summary judgment motions, and we will not address theories raised for the first time on appeal. *See Airfreight Express, Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109, ¶ 17 (App. 2007) ("A party must timely present his legal theories to the trial court so as to give the trial court an opportunity to rule properly.") (quoting *Payne v. Payne*, 12 Ariz. App. 434, 435 (1970)). Accordingly, we find no error in the grant of summary judgment in VPS's favor on the claims of conversion and trespass to the chattels.

### C. Standard of Care: Negligence and Negligent Supervision

¶19 Appellants also argue the trial court erred in dismissing their claims for negligence and negligent supervision on the grounds that they had failed to present any expert evidence regarding the standard of care for security professionals after having been granted an adequate opportunity to do so. Appellants argue expert testimony is not required because the claims are not premised upon the provision of "legitimate security services" but rather on VPS's purported "negligent belief" that Dickens could authorize entry to and actions on school grounds. We review the trial court's decision whether expert testimony is required for an abuse of discretion. *See Warner v. Sw. Desert Images, L.L.C.*, 218 Ariz. 121, 128, ¶ 14 (App. 2008) (citing *State v. Mosley*, 119 Ariz. 393, 400 (1978)).

¶20 To establish a negligence claim, a plaintiff must prove: (1) a duty requiring the defendants to conform to a certain standard of care; (2) a breach of the standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983)). Ordinarily, the standard of care "focuses on the conduct of a reasonably prudent person under the circumstances," *Sw. Auto Painting & Body Repair, Inc. v. Binsfeld*, 183 Ariz. 444, 448 (App. 1995) (citation omitted), and no evidence regarding the standard of care is necessary "because the jury can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances," *Bell v. Maricopa Med. Ctr.*, 157 Ariz. 192, 194 (App. 1988) (citation omitted). However, where the duty arises "because the defendant has held himself out to be trained in a

particular trade or profession," *Kreisman v. Thomas*, 12 Ariz. App. 215, 220 (1970), and the negligence is not "so grossly apparent that a layman would have no difficulty in recognizing it," *Bell*, 157 Ariz. at 195 n.1 (quoting *Riedisser v. Nelson*, 111 Ariz. 542, 544 (1975)), expert testimony is required "as to the care and competence prevalent in the business or profession," *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins.*, 154 Ariz. 307, 315 (1987) (citing *Powder Horn Nursery, Inc. v. Soil & Plant Lab., Inc.*, 119 Ariz. 78, 81-82 (App. 1978)); *see also Stanley v. McCarver*, 208 Ariz. 219, 224, ¶ 16 (2004) ("The standard of care imposes on those with special skills or training, however, the higher obligation to act in light of that skill, training, or knowledge . . . .").

¶21        Here, a duty of care arises from the relationship between North Star and VPS based upon a contract for professional services, *see Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, ¶ 12 (App. 2012) (citing *Gipson*, 214 Ariz. at 145, ¶¶ 18-19 (explaining a duty of care may arise from a special relationship based upon contract)), and Appellants claim VPS was negligent in failing to thoroughly investigate Dickens' authority to retain VPS's services.  The alleged negligence is not so grossly apparent that a layperson could readily identify it.  Rather, VPS held itself out as having particular skill and training, and expert testimony may assist in establishing the standard of care by which the actions of a licensed security guard company and its employees are measured.  *See Baird v. Pace,* 156 Ariz. 418, 420 (App. 1987) (discussing the use of expert testimony in a legal malpractice action); *see also Kreisman,* 12 Ariz. App. at 221.  Moreover, other jurisdictions have determined expert testimony is either required or appropriate to establish the standard of care for a claim of negligent hiring, training, and supervision of security personnel.  *See Farooq ex rel. Estate of Farooq v. MDRB Corp.*, 498 F. Supp. 2d 284, 287 (D.D.C. 2007) (citations omitted); *Harris v. Pizza Hut of La., Inc.*, 455 So. 2d 1364, 1368 (La. 1984) (establishing the requisite standard of care for a security guard through expert testimony); *Tucker v. Sandlin*, 337 N.W.2d 637, 640 (Mich. Ct. App. 1983) (same); *Burns Int'l Sec. Servs. Inc. of Fla. v. Phila. Indem. Ins.*, 899 So. 2d 361, 363 (Fla. Dist. Ct. App. 2005) (same).  *But see Deeds v. Am. Sec.*, 528 N.E.2d 1308, 1312 (Ohio Ct. App. 1987) (concluding expert testimony regarding the generally accepted standards of conduct for a security guard would not assist the jury where the scope of the guard's duties was limited by contract).  We find no abuse of discretion.

¶22        Appellants further suggest within their reply brief that the trial court erred by not allowing them additional time to obtain an expert to opine on the standard of care.  *See* A.R.S. § 12-2602(E)-(F) (requiring a plaintiff pursuing a claim premised upon professional negligence to

produce a preliminary expert opinion affidavit and permitting the court to dismiss a claim if the plaintiff does not comply after being given an opportunity to cure the defect); *Kaufman v. Jesser*, 884 F. Supp. 2d 943, 955 (D. Ariz. 2012). We reject that argument for several reasons. First, Appellants did not raise this argument in their opening brief. We will not consider arguments made for the first time in a reply brief. *Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007) (citing *Muchesko v. Muchesko*, 191 Ariz. 265, 268 (App. 1997)).

**¶23** Second, Appellants failed to comply with the requirements of A.R.S. § 12-2602 in the trial court. Section 12-2602(A) requires a plaintiff filing a claim against a licensed professional to file a certification of "whether or not expert testimony is necessary to prove the licensed professional's standard of care or liability." Had Appellants complied and certified no expert was required, the burden would have shifted to VPS to request a determination from the court that expert testimony was required. A.R.S. § 12-2602(D). But Appellants never filed any certification and cannot now seek relief under the statute.

**¶24** Finally, Appellants failed to follow through on multiple opportunities to obtain and disclose a standard of care expert. VPS disclosed its standard of care expert in its initial disclosure statement. Appellants were therefore on notice that VPS believed expert testimony was necessary but took no action to obtain a competing opinion during the course of discovery. Then, after discovery closed and VPS filed the motion for summary judgment, Appellants disputed whether an expert was required, but, in the alternative, requested consideration of the motion be stayed until they could obtain a competing expert "if th[e trial c]ourt intends to consider the expert opinion regarding provision of security services." The court denied the alternative motion without prejudice because Appellants did not comply with Arizona Rule of Civil Procedure 56(f) (requiring a party seeking additional discovery prior to responding to a motion for summary judgment submit an "affidavit showing that, for specified reasons, it cannot present evidence essential to justify its opposition" and a separate statement certifying the parties have been unable to resolve the matter "after personal consultation and good-faith efforts"). Over four months later, when the court issued its ruling granting summary judgment in VPS's favor, Appellants still had not complied with Rule 56(f). Under these circumstances, no basis exists to grant Appellants additional time to obtain an expert.

### D. Outrageous Conduct: Intentional Infliction of Emotional Distress

**¶25** Appellants characterize VPS's actions as an "armed invasion" or an "armed coup d'etat" of the school and argue the trial court erred in concluding they were not sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. *See Johnson v. McDonald*, 197 Ariz. 155, 160, ¶ 23 (App. 1999) (citation omitted); Restatement (Second) of Torts § 46 cmt. d (1965) (explaining that a claim for intentional infliction of emotional distress must be based upon conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community"). We review the determination of whether actions are sufficiently extreme and outrageous for an abuse of discretion. *See Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 428 (App. 1995) (citing *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 554 (App. 1995)).

**¶26** Although Appellants' characterization paints a vivid picture, the evidence does not sustain that characterization. The record reflects Phoenix Police officers responded to the school by 3:09 p.m., twenty minutes before the meeting was called to order. Vollmer had a handgun in a holster on his duty belt, but when the officers arrived, "Vollmer immediately went and secured his handgun in his personal vehicle, eliminating any handguns at the facility." Although the events upset Huzar and Robinson and they may have found the presence of VPS security officers threatening, no physical violence occurred. On this record, we find no abuse of discretion in the trial court's determination that the events were not conducted in a fashion "beyond all possible bounds of decency."

## II. Dismissal for Failure to Arbitrate

**¶27** Huzar and Robinson argue the trial court erred in concluding they lacked good cause for their failure to arbitrate their sole remaining claim within the court-ordered deadline.

**¶28** A plaintiff has a duty to pursue his case diligently and ensure it is brought to trial within a reasonable time. *Price v. Sunfield*, 57 Ariz. 142, 148-49 (1941). To determine whether the plaintiff's prosecution of an action is adequate, the trial court must consider the activities of all parties and other factors that might impede prompt resolution of the case. *Jepson v. New*, 164 Ariz. 265, 276 (1990). Therefore, we review the court's order for an abuse of discretion. *See Slaughter v. Maricopa Cty.*, 227 Ariz. 323, 326,

¶ 14 (App. 2011) (dismissal for failure to prosecute) (citing *Cooper v. Odom*, 6 Ariz. App. 466, 469 (1967)); *Ugalde v. Burke,* 204 Ariz. 455, 458, ¶ 10 (App. 2003) (determination that party failed to show good cause) (citing *Nordale v. Fisher*, 93 Ariz. 342, 345 (1963)).  "An abuse of discretion occurs when there is no evidence to support a holding or the court commits an error of law when reaching a discretionary decision." *Dowling v. Stapley,* 221 Ariz. 251, 266, ¶ 45 (App. 2009) (citations omitted); *see also Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455–56 (1982) (citations omitted).

**¶29**		We find no abuse of discretion here.  The record reflects that in July 2014, an arbitrator was appointed and the parties were given 120 days to complete arbitration.  *See* Ariz. R. Civ. P. 73, 74(b).  The arbitrator immediately contacted counsel and indicated her available dates from late August through October.  In September 2014, VPS reminded Huzar and Robinson's counsel that the assault claim remained pending with an arbitration deadline of November 10.  In October 2014, Huzar and Robinson's counsel contacted VPS seeking available dates for the arbitration, but Huzar and Robinson did not move to continue the arbitration deadline until after the date had passed.  VPS then moved to dismiss the claim.

**¶30**		Huzar and Robinson concede they took no steps to schedule a hearing until late October 2014, ultimately settling on a date occurring after expiration of the deadline, without requesting an extension.  They suggest, however, that the trial court should have granted their belated request for an extension because it was only a three-month "lapse in diligence" compared to the four years they "vigorously litigated" the entire case.  This comparative analysis does not demonstrate good cause.  *See State v. Churchill*, 82 Ariz. 375, 380 (1957) ("Good cause means substantial reason, that is, one that [a]ffords a legal excuse."); *cf. Maher v. Urman*, 211 Ariz. 543, 548, ¶ 14 (App. 2005) ("In order to show good cause to extend time for service, a plaintiff must demonstrate he or she exercised due diligence in trying to serve the defendant.") (citing *Snow v. Steele*, 121 Ariz. 82, 83 (1979)). Huzar and Robinson's counsel apparently correctly calendared the deadline, and he was reminded of that deadline by both the arbitrator and VPS's counsel.  Huzar and Robinson cannot complain they were denied due process when they chose not to exercise their opportunity to be heard.  *See Watahomigie v. Ariz. Bd. of Water Quality Appeals*, 181 Ariz. 20, 27 (App. 1994) (citations omitted); *Graf v. Whitaker*, 192 Ariz. 403, 407, ¶ 16 (App. 1998) ("Courts have the power to control the proceedings before them and enter orders of default or dismissal when a party fails to abide by the procedural rules of the court.") (citing *AG Rancho Equip. Co. v. Massey-Ferguson, Inc.*,

123 Ariz. 122, 122-23 (1979)).  Under the circumstances, we find no abuse of discretion.

**CONCLUSION**

**¶31**        For the foregoing reasons, we affirm.

**¶32**        VPS requests an award of attorneys' fees and costs pursuant to the Agreement and A.R.S. §§ 12-341 and -341.01(A).  As the prevailing party, VPS is awarded its costs and reasonable attorneys' fees incurred on appeal upon compliance with ARCAP 21(b).



AMY M. WOOD • Clerk of the Court
FILED:  AA